ESTATE OF PADDOCK: TRAPHAGEN and others, Trustees, Appellants, vs. PADDOCK and another, Respondents.

*March 14—April 7, 1925.*

*Wills: Construction: Intent of testator: Assignment in specie or conversion: Corporate stock as corpus of estate: Trustees controlling management of corporation: Supervision by court.*

1. In the construction of wills the principal canon to be observed is to ascertain the intention of the testator from a review and consideration of the entire will.   p. 549.
2. A will which created a trust estate for five years, the *corpus* of which was composed chiefly of stock in an insurance company formerly controlled by testator, and which ordered the trustees to pay over and assign a part thereof to a daughter, at her option, at the end of five years, or to continue the trust estate, is construed to require delivery of the stock *in specie* upon her election at the end of the five-year period.   p. 553.
3. A direction in the will that part of the estate be retained by the trustees and the income therefrom be paid to the widow, and a devise of such part to a son after the widow's death, are construed to contemplate the retention *in specie* of this part for the benefit of the widow, and that at her death the part retained becomes the absolute property of the son.   p. 555.
4. Where the will provided that the share of the daughter should go to a son of testator in case the daughter did not survive the five-year period, a finding that if the trust as to the entire estate should be continued, and if during such extended period the daughter should die her interest was to go to the son, is erroneous.   p. 556.
5. Where the trust estate was composed chiefly of a controlling interest in an insurance company, and the will provided that the trustees select a successor to deceased in the management of the business, a requirement by the county court, at the end of such period, of an itemized account of the affairs of the company, is an abuse of discretion, in the absence of any showing or allegation of fraud or diversion of funds.   p. 557.

APPEAL from a judgment of the county court of Milwaukee county: JOHN C. KAREL, Judge.   *Reversed.*

The appeal is from a judgment construing the will of Jerome Orlando Paddock, deceased, and directing the trustees to file certain detailed accounts of the business of the Time Insurance Company.

The deceased died testate, a resident of Milwaukee county, Wisconsin, on April 16, 1918, and his last will and testament, executed in 1912, in so far as it is material here, reads as follows:

"*First.* I will and direct that all my just debts and funeral expenses be fully paid out of my estate as soon as may be after my decease.

"*Second.* I give, devise, and bequeath all the rest, residue, and remainder of my estate, both real and personal, of every name and nature whatsoever, to my executors and trustees hereinafter named, and their successors in office, in trust, for the following purposes, to wit:

"My said executors and trustees shall keep my entire estate, including all my stock in and of the Time Insurance Company, a corporation organized under the laws of Wisconsin, intact, and shall not sell or dispose of any part of 'it for the term of five years after my death. It is my will that one of my executors and trustees, as they may agree, shall take my place in the management of the Time Insurance Company and shall avoid having any business relations whatever, if possible, with J. O. Paddock, Jr., or B. B. Paddock, my sons, and it is also my wish that neither of my said sons shall be permitted to have anything to do with the management of said Time Insurance Company in any capacity.

"During said period of five years the trustees and executors aforesaid shall pay one third of the income derived from my estate to my beloved wife, *Anna P. Paddock,* in quarterly instalments, and two thirds of the income to my daughter, *Nelsona L. Traphagen,* also in quarterly instalments.

"At the end of said period of five years my said executors and trustees shall pay over, assign, bargain, sell, and convey by proper instruments in writing and deliver to my said daughter, *Nelsona L. Traphagen,* two-thirds part of my entire estate.

"In the event that my said daughter, *Nelsona L. Traphagen,* is not living at the end of said period of five years, then my said executors and trustees shall pay over, assign, bargain, sell, and convey said two-thirds part of my said estate to my son, *Paul Paddock,* his heirs, executors, administrators, or assigns.

"The remaining one-third part of my estate shall remain in the hands of my executors and trustees, hereinafter named, and they shall keep the same properly invested and pay the income thereof to my beloved wife, *Anna P. Paddock,* in quarterly instalments, during the term of her natural life, and at her death said one-third part of my estate is hereby given, devised, and bequeathed unto my son, *Paul Paddock,* his heirs, executors, or assigns.

"*Third.* It is my wish that after the expiration of the period of five years, mentioned in item second of this my will, my said executors and trustees may, with the consent of the beneficiaries interested, continue in the ownership and possession in trust of the stock in the Time Insurance Company and carry on the business of said company as long as said beneficiaries desire them to do so.

"*Fourth.* I hereby nominate and appoint my son-in-law, *C. G. Traphagen,* and my friend, *Emil Giljohann,* as executors and trustees for the purpose of carrying out the provisions of my last will and testament. In case of the death or inability of either one of them to act, his successor shall be appointed by my daughter, *Nelsona L. Traphagen,* or, in case she is not living or unable to act, by the court.

"*Fifth.* I have made no provision for my sons, J. O. Paddock, Jr., and B. B. Paddock, for the reason that by their former and present business associations with me they have profited to such extent that for that and other sufficient reasons I do not deem them entitled to any part of my estate."

Upon an application duly made to the county court the said last will and testament was duly admitted to probate, and one *C. G. Traphagen,* the husband of *Nelsona L. Traphagen* and a son-in-law of the deceased, and one *Emil Giljohann,* were appointed the executors of said last will and testament. Pursuant to the provisions of the will the executors agreed that *C. G. Traphagen* take the place of the deceased in the business of the Time Insurance Company, and he thereupon was elected to the office of president of the company, assumed the management thereof, and continued in that position up to the present time.

On May 22, 1919, a final decree was entered in the matter of the estate of the deceased, and the property belonging to the estate was therein assigned in accordance ,with the provisions of the will, and in such decree the assignment was made in the express language used in the will. At the time the decree was entered the property of the estate consisted of certain household furniture and effects, which were assigned to the widow; 1,730 shares of the capital stock of the Time Insurance Company; fifty shares of stock of Johnson-Bostwick & Company; fifty-one shares of stock of Hop-Cannon Mining & Smelting Company; two Liberty bonds, each of the par value of $50, and certain outstanding accounts amounting to $2,372.85. Thereupon the two trustees named in the will were appointed by the court, and *C. G. Traphagen* continued as the representative of the estate in the office of president and manager of the insurance company.

Five years having elapsed since the death of the deceased, the trustees, on May 10, 1923, filed an account of their trusteeship, and in connection with such account petitioned the court for instructions with reference to the continuing of the trusteeship as provided for by the will; also for a settlement of the trust in so far as it affected the interests of *Nelsona L. Traphagen,* she having survived the five-year period provided for by the will; also for directions as to certain outstanding accounts amounting to about $1,500, which it was alleged were worthless and uncollectible. Before any determination whatever on the part of the county court in the matter of said petition, *Nelsona L. Traphagen* also filed a petition, in which, among other things, she asserted her right under the will to a two-thirds part of the estate held in trust, and prayed the court for an order directing that her interests be delivered to her.

To these petitions *Anna P. Paddock,* the widow, and *Paul Paddock,* a son, filed objections, which in substance set forth

that no proper account had been filed of the affairs and condition of the Time Insurance Company, which had been managed from the time of the death of the deceased by *C. G. Traphagen;* that a true construction of the will required the entire stock belonging to the estate, of the insurance company, be sold as a unit and the proceeds distributed in accordance with the provisions of the will, provided that the beneficiaries shall not agree to continue the trust in so far as it involved the further conduct of the business of the insurance company. Said matter was duly heard by the court, and the court construed the will to the effect that after the expiration of the five-year term, or the extended term if the beneficiaries desired to continue the trust, the stock belonging to the estate, in the insurance company, be sold as a unit, and that two thirds of the proceeds be turned over to *Nelsona L. Traphagen* if living, otherwise to *Paul Paddock,* and one third of the proceeds retained by the trustees during the lifetime of *Anna P. Paddock.* The court also directed that the trustees file detailed accounts of the financial condition of the Time Insurance Company from the time that they took over the control thereof, and also further statements and trial balances showing the condition of the insurance company from time to time, and also the amounts paid to the officers, directors, and stockholders.

Judgment having been entered accordingly, the trustees and *Nelsona L. Traphagen* separately appealed therefrom. Further facts will be stated in the opinion.

For the appellants there were briefs by *Roehr & Steinmetz,* and oral argument by *Ida E. Luick,* all of Milwaukee.

*Robert N. McMynn* of Milwaukee, for the respondent *Paul E. Paddock.*

*Benj. T. Schiek* of Milwaukee, for the respondent *Anna P. Paddock.*

DOERFLER, J.    The first issue presented involves the construction of the will. *Nelsona L. Traphagen* having ex-

pressed a desire that the trust as to her shall be finally settled, the question arises whether two thirds of the stock in the insurance company shall be directed to be delivered to her *in specie,* or whether the entire stock be ordered sold and the proceeds thereof divided as follows, to wit: two thirds to *Nelsona L. Traphagen,* and one third to the trustees for the benefit of the widow and of *Paul Paddock.*

In the construction of wills the principal canon to be observed is to ascertain the intention of the testator from a review and consideration of the entire will. *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452; *Will of Cramer,* 183 Wis. 525, 198 N. W. 386. The organization and the operation of the business affairs of the Time Insurance Company, from the time of its inception up to the time of the death of the deceased, constituted the life work of Jerome Orlando Paddock, deceased. During all this time he not only had the controlling stock interest in the company, but was also its president and general manager and a member of the board of directors. He shaped the policy of this company, and during the long period of time in which he was engaged in this business he had without dispute succeeded in building up and maintaining a large and highly successful institution. The deceased left him surviving his widow, *Anna P. Paddock,* and four children by a former marriage, namely, *Nelsona L. Traphagen, Paul E. Paddock,* J. O. Paddock, Jr., and B. B. Paddock. With the exception of a few years, one *Emil Giljohann,* who had been insurance commissioner of the state of Wisconsin for a period of four years, was associated with the deceased in the conduct of the business of the insurance company, up to the time of his death, since 1903. *Giljohann* was the secretary and treasurer of the company and also a director. At the time of his death the deceased owned 1,730 shares of the insurance company stock, the latter company having a capital stock consisting of 2,500 shares of the par value of $10 a share. *Nelsona L. Traphagen* owned 500 shares, and the balance of the stock was

held by various parties in small amounts.    At the time of the hearing the widow, *Anna P. Paddock,* was seventy-six years of age.    *C. G. Traphagen,* one of the executors and trustees, was a son-in-law of the deceased and the husband of *Nelsona L. Traphagen.*    He had occupied for over thirty years an important position at Duluth as manager of the Northwestern branch of the R. G. Dun Company, a commercial agency, and for upwards of five years prior to the death of the deceased he had been a director of the insurance company.    In the light of these surrounding facts and circumstances we will endeavor to arrive at the true intent of the testator as expressed in his will.

Nothing that appears from the record would indicate that the deceased and his wife had not lived happily and in perfect harmony.    If any discord or unpleasantness existed in the family it was with reference to two of the sons of the deceased, for whom he made no provision in the will and as to whom he directed that they shall in no manner participate in the conduct of the business.    True, he gives his widow the income during her life of but one third of the estate, with remainder over to the son *Paul,* while he gives to *Nelsona,* if she survive the five-year period referred to in the will, two thirds of his entire estate.    This evidently, on the face of it, has a tendency to create the impression that he has not adequately made provision for his widow.    The widow, however, at the time of the death of the deceased, was seventy years of age, and at the time of the hearing had arrived at seventy-six years of age.    The widow had a claim upon his bounty at least to the extent of a reasonable provision in her behalf that would meet her necessities during the remainder of her life:    The capital stock of the insurance company, having a par value of $25,000 according to the appraisal made in the matter of the estate, shows an actual value in excess of $65,000.    Besides his stock in the insurance company there was other property worth approximately $7,500. During the five-year period after the death of the deceased,

large and substantial dividends were earned and paid by the insurance company, of which the widow received one third. This demonstrates clearly that the deceased, in bequeathing to his widow the income from one third of his estate during the remainder of her life, reasonably and adequately provided for her wants and needs.

While the son *Paul* did not receive as generous treatment by the will as his sister *Nelsona,* yet after the death of his stepmother the remainder of the one third was bequeathed to him. The deceased also realized the possibility of the death of *Nelsona* during the five-year period, and, evidently being desirous that his property shall remain in his family, he provided that in the happening of that event such two-thirds interest shall pass to the son *Paul.* So that no complaint can properly be made on the part of *Paul* that he was not fairly considered by the deceased in the distribution of his bounty.

*Nelsona,* however, was the favorite member of his family, and in the distribution of his property she received primary consideration. That he placed great faith and confidence in her is shown by the provision in the will that upon the death of either of the executors or trustees *Nelsona* shall have the power of naming the successor. Her husband, *C. G. Traphagen,* a man in the prime of life, with a great many years of experience in a prominent commercial enterprise, and who had been for upwards of five years prior to the death of the deceased a director of the insurance company, was the one whom the deceased evidently had in mind as his successor in the conduct of the business. In any event the trustees exercised their power under the will to name and appoint him as such successor. *Giljohann,* a prominent insurance man, who had served two terms as insurance commissioner of the state and who had been associated with the deceased for over fifteen years as one of the principal officers of the company, was selected and appointed by him as one of the executors and trustees of the will.

The succession and continuance of the business of the insurance company was at all times near and dear to the deceased's heart. Therefore he concluded, at the time he executed the will in 1912, to continue the business not only up to the time of his death but for a definite and specified term of five years thereafter, and in and by his will express directions were given to maintain the estate intact during this period. *Nelsona,* his daughter, at the time of the death of the deceased was the owner in her own right of 500 shares of the stock of the company. He evidently realized that by giving to his widow and his son *Paul* one third of his estate and to *Nelsona* the remaining two thirds (she owning at that time 500 shares of the stock in her own right), it would give her controlling interest of the affairs of the company. It is not unlikely, but on the contrary is highly probable, that the deceased concluded that the actual conduct of the business after his death, for a period of five years, would demonstrate the ability of the trustees to conduct the business successfully.

Bearing all these considerations in mind, a strong inference follows that it was the cardinal thought of the deceased that his life work should not be disposed of by sale or under the hammer, but should inure to the benefit of those whom he deemed worthy thereof in his testamentary disposition.

Giving these considerations proper weight, nevertheless it may be argued that some doubt still exists as to whether it was the intention of the deceased that the two thirds of the estate bequeathed to *Nelsona* shall be assigned to her *in specie.* It is plausibly argued by counsel for the widow and the son *Paul* that if the will be so construed as to give to *Nelsona* her two-thirds interest *in specie,* and to require the other one third to be sold and held in trust for the benefit of the widow, *Nelsona* would obtain a controlling interest in the company, and that, inasmuch as the other one third represents a minority interest, such interest would be at the mercy of the majority stock. While we hesitate in a belief that

*Nelsona* would take undue advantage of the situation as portrayed, we must admit, notwithstanding the family relation existing, that such a possibility might transpire, and were it to occur, such grave injustice might be done to the deceased's life mate as to deprive her of her reasonable means of subsistence. As will hereafter appear, it is our opinion that the will should not be so construed. However, we have arrived at the definite conclusion that at the end of the five-year period, *Nelsona* having definitely elected not to continue the trust as to her interests, she is entitled to an assignment of two thirds of the shares of the insurance company stock *in specie.*

The third from the last paragraph in the second provision of the will is as follows:

"At the end of said period of five years my said executors and trustees shall pay over, assign, bargain, sell, and convey by proper instruments in writing and deliver to my said daughter, *Nelsona L. Traphagen,* two-thirds part of my entire estate."

Note specifically the language used in the paragraph quoted. The executors are first required to "pay over" two thirds of the estate. The word "pay," in its commonly accepted meaning, denotes payment in money. Part of the estate actually consists of money, and undoubtedly the testator had in mind that at the end of the five-year period some moneys would accumulate which would be the proper subject of division. The next term used is "assign." This is a technical term, used to convey personal property of all kinds, and inasmuch as the testator was the owner only of personal property in the form of stock, and inasmuch as he directed his executors to assign two thirds of the estate to *Nelsona,* his evident intention by the use of this term was to make ample provision so that the proper proportion of the stock designated in the will shall be transferred to *Nelsona* by an assignment. "The words 'bargain and sale' have a settled legal meaning, and import a sale which vests the

property in the buyer." 7 Corp. Jur. 921, 922. It is true that the deceased owned no real estate at the time of his death; nor does it appear from the record that he owned any real estate when the will was made. However, he realized the possibility of acquiring real estate before his death, and in order to meet every possible contingency he included in this testamentary paragraph the provision whereby two thirds thereof might be conveyed by proper deeds of conveyance to his daughter.

We will now consider the wording of the second from the last paragraph of the second provision of the will. This paragraph is as follows:

"In the event that my said daughter, *Nelsona L. Traphagen,* is not living at the end of said period of five years, then my said executors and trustees shall pay over, assign, bargain, sell, and convey said two-thirds part of my said estate to my son, *Paul Paddock,* his heirs, executors, administrators, or assigns."

Here again the testator uses the terms "pay over," "assign," "bargain, sell, and convey said two-thirds," etc. Here he clearly manifests a disposition with respect to two thirds of his estate in the event that his daughter *Nelsona* shall not survive the five-year period in a manner similar to that provided in the paragraph under which *Nelsona* is the beneficiary.

The last paragraph of provision number 2 reads as follows:

"The remaining one-third part of my estate shall remain in the hands of my executors and trustees, hereinafter named, and they shall keep the same properly invested and pay the income thereof to my beloved wife, *Anna P. Paddock,* in quarterly instalments, during the term of her natural life, and at her death said one-third part of my estate is hereby given, devised, and bequeathed unto my son, *Paul Paddock,* his heirs, executors, or assigns."

In marked contrast to the paragraphs above quoted, the testator saw fit to omit the use of the expressions "pay

over," "assign," "bargain," "sell and convey," etc.   In place
thereof he directs that the remaining one third shall remain
in the hands of the executors and trustees and that they
shall keep the same properly invested and pay the income
thereof to the wife, etc.   By this paragraph the testator in-
tended one of two things: either that the stock shall be kept
and held by the trustees for the benefit of the widow and of
the son *Paul,* or that it shall be sold and the proceeds in-
vested in proper trust securities and the income thereof paid
to the widow.   Here it must be borne in mind that the trust
in all events was to continue as to the interest of the widow
for the period of her natural life.   The stock, at the end of
the period of five years, was in the hands of the trustees *in
specie.*   In express language he directs this one-third interest
of the estate to remain in the hands of the executors and
trustees.   This does not indicate a desire on the testator's
part to have the stock sold, but to keep it intact; and when
he uses the expression "properly invested," having mani-
fested his confidence in the business of the insurance com-
pany, we infer that a retention of the stock by the trustees
was clearly his purpose.   Here again we must assume that
the testator did not intend that his widow shall be at the
mercy of his daughter, who was to become the controlling
stockholder of the corporation, but, on the contrary, in view
of the successful operation of the business by the deceased
and the earning of large dividends upon the stock, the pro-
ceeds from the investment in the stock would very likely
secure to the widow a larger and more adequate return than
an investment in trust securities.

   After the death of the widow the testator provides that
said one-third part of his estate is devised and bequeathed
to the son *Paul,* his heirs, executors, or assigns.   Here again
the testator manifests plainly the possibility, after the mak-
ing of the will, of his acquiring real estate, and he therefore
uses the technical legal term applicable to the transfer of real
estate by will by the use of the word "devise."   So that

after the death of the widow the one-third interest becomes the absolute property of *Paul,* to be by him dealt with in accordance with his wishes.

*Nelsona* having elected to receive her share of the estate, we construe the will to mean that she is entitled to her share *in specie.* It is further held that the will contemplates the retention of the other one third for the benefit of the widow and of the son *Paul,* as above indicated.

The court further found that, with consent of the beneficiaries, the trust as to the entire estate shall continue, and if during such extended period *Nelsona L. Traphagen* shall die, her interest shall go to her brother *Paul.* A casual reading of the will will disclose that the court was in error in so holding. The two-thirds part of the estate bequeathed to *Nelsona* is dependent only upon her surviving the five-year period.

At the hearing the trustees and *Nelsona* were sworn as witnesses. The trustees testified to the correctness of the accounts. An opportunity was offered the respondents to inquire as to the subject of the salaries of the officers and employees of the insurance company. A number of copies of the reports of the insurance company to the insurance commissioner were submitted to respondents' counsel and were offered in evidence. No charge was made that the managing trustee had been guilty of any fraud or lack of good faith, or that any of the moneys of the insurance company had been embezzled or diverted into illegal channels. It may be questionable whether the respondents and the county court, in this proceeding, have a right to question the good faith of the trustees, and particularly the one who became the manager of the company, or whether the county court has jurisdiction to order the detailed statements and trial balances directed by the court to be furnished. It must be admitted that the widow and *Paul,* being the equitable owners of one third of the stock held by the estate, were not remediless, and that in a proper proceeding in a court of general juris-

diction they could have asserted their rights, if the managing trustee had been guilty of any fraud or illegal acts. This is a matter in which the corporation itself was primarily concerned, and which would, if fraud or illegality had been perpetrated, have affected its interests. However, assuming that the county court had authority and power to call the managing trustee to account by reason of the provision in the will whereby the trustees were to select a successor of the deceased in the business, no showing whatever for such accounting was made. No fraud, embezzlement, or illegal diversion of funds was either alleged or shown. To require, under such circumstances, the trustees to furnish an itemized, detailed account of the affairs of a large insurance company, covering a long period of years, is clearly an abuse of discretion, and we so hold.

*By the Court.*—The judgment of the lower court· is reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.

JONES, J., dissents.