ESTATE OF PADDOCK: COYKENDAHL and others, Appellants, vs. PADDOCK, Respondent.

*November 10—December 5, 1933.*

*Benj. T. Schiek* of Milwaukee, for the appellants.

For the respondent there was a brief by *George A. Affeldt,* attorney, and *H. F. Lichtsinn* of counsel, both of Milwaukee, and oral argument by *Mr. Affeldt.*

FOWLER, J.   On April 16, 1918, Jerome Orlando Paddock died leaving a will by which he bequeathed his entire estate, after payment of debts, to trustees named in the will and thereafter appointed by the court, to be held intact for five years and then two-thirds thereof to be assigned to his daughter and the remaining one-third to remain in the hands of the trustees, and the income paid to his widow in quarterly instalments during her life and at her death to be given to his son Paul.

This will was before the court in proceedings for construction in *Estate of Paddock,* 186 Wis. 544, 203 N. W. 347.   Pursuant to the mandate of this court it was ad-

judged in those proceedings that one-third of the testator's stock in the Time Insurance Company, 576⅔ shares, should remain in the hands of the trustees, and that they should pay "the income thereof" to the widow "in quarterly instalments," during her life, and at her death assign and pay over "said residue" to Paul Paddock.

Up to 1926 the trustees paid to the widow such dividends as were declared upon stock so held by them. On November 22d of that year a stock dividend of $50,000 was declared, which raised the capital stock of the corporation from $25,000 to $75,000 and increased the shares held by the trustees by 1153⅓ shares. On these and the original 576⅔ shares the trustees paid such dividends as were declared up to 1930, when the trustees petitioned the court for instruction "Whether they should continue to hold said 1153⅓ shares . . . as trustees, or whether . . . said shares . . . are income and as such payable to the widow."

The widow died before hearing on the petition leaving a will by which she bequeathed her estate in equal portions to her two children by a marriage prior to her marriage to the testator. These legatees claim the stock dividend was declared from earnings, was therefore income, and delivery of the 1153⅓ shares should be made to the executor of the will for them as income. Paul Paddock claims that the 1153⅓ shares are corpus of his father's estate and should be delivered to him as remainderman.

The county court construed the will as evidencing an intent of the testator that the Time Insurance Company stock owned by him should be kept in his family, and as a consequence held that the 1153⅓ shares were corpus and should be delivered to the son Paul.

The appellants raise two questions: (1) whether the stock dividends are corpus to go to the respondent or income to go to the appellants; and (2) whether the finding of the county judge as to the amount of the increase of the sur-

plus of the corporation between the time of the testator's death and the date of the stock dividend is supported by the evidence.

(1) The will is specific that the income of the testator's estate, which included the income from his Time Insurance Company stock, should be paid to the widow during her life. The opinion of this court when the case was formerly before it, and the judgment of the county court entered pursuant to that opinion, conclusively so determined. The net earnings of the insurance company constitute its income, whether the company sees fit to pay them out as dividends or to let them accumulate and add to its capital as surplus. The surplus accumulated between the time of the testator's death and the time of the stock dividend thus constituted income in which the widow was entitled to share in such ratio as the stock upon which she was entitled to the income bears to the whole amount of the capital stock of the corporation. She was entitled to payment of her proportionate share of the increase in surplus in cash, or in stock dividends if the company saw fit to distribute it in that form. *Will of Jenkins,* 199 Wis. 131, 225 N. W. 733, and cases cited.

The trial court in effect gave to the word "income" used in the will the meaning, such dividends as the directors of the corporation may see fit to pay in cash. Language can not be so distorted, even to cover a situation in which it may be surmised that the testator might have used the latter or some like expression instead of the word "income" had he contemplated accumulation of surplus and distribution of it by stock dividends. The law of this case is as declared when the will was formerly before us for construction—that the widow was entitled to be paid the income of one-third of the testator's stock in the Time Insurance Company during her life, and income from stock is income from stock as defined and determined by the *Jenkins Case, supra,* and the other decisions of this court therein referred to.

(2) The trial judge found that the surplus and capital of the insurance company at the testator's death was $86,387.37. As the capital was $25,000, the surplus according to this finding was $61,387.37. It is stipulated that the surplus at the time the stock dividend was declared was $101,612.63. According to these figures the surplus that accumulated during the interim between the testator's death and the distribution of the stock dividend was $40,225.26.

The appellants claim that the evidence shows without dispute that the accumulations of surplus during the interim involved exceeded $50,000 and that the entire stock dividend was thus made entirely from the increase of surplus.

The respondent introduced in evidence a statement prepared by Mr. Traphagen, an officer of the insurance company and the husband of respondent's sister, which the witness stated was "a statement of the condition of the company" at the date of the testator's death. This statement gives the surplus at that time as found by the trial judge, and is manifestly the basis of his finding. The witness did not testify that the statement was correct, nor from what it was prepared. But the appellants did not object to its receipt in evidence and it therefore may be properly considered as evidence from which an inference of the capital set-up of the corporation at that time could be drawn. The statement is attacked by introduction in evidence of a statement of the cash receipts and cash disbursements of the company during the period, from which alone it would appear that a loss was sustained, and it is argued that this loss necessarily reduced the surplus of $65,152.14 which by another statement in evidence existed on December 31, 1917, three and one-half months prior to the testator's death. But the cash account does not show the uncollected premiums or the accrued unpaid losses of the company during this period, and obviously can form no accurate basis for inferring a net loss of the company or a depreciation of its surplus during that period.

Mr. Traphagen admitted there was some loss during the period, but this is not inconsistent with his statement of the surplus at the testator's death, for that statement shows a shrinking of surplus during the period of over $3,700.

Mr. Traphagen also testified that a dividend of $15,000 was declared in January preceding the testator's death, and from this it is argued that the payment of this dividend decreased the surplus existing on December 31, 1917, by the amount of that dividend and that this decrease continued to exist at the testator's death on April 16th, following. This dividend was not all paid during the interim. From the cash account above referred to it appears that a total of $9,620 was paid out in dividends during the period, and from a letter in evidence it appears that $10,380 of the $15,000 was payable to the testator and that prior to his death $5,000 of it was paid to him. It would seem from this that if the company sustained a loss from December 31st to the testator's death as admitted by Mr. Traphagen and during that time paid out dividends of $9,620, the surplus of December 31st must have been reduced by at least that amount on April 16th, and that although the precise amount of the depreciation cannot be determined it should be assumed that the surplus was reduced by the amount of the dividend and was no more than $65,152.14, the surplus on December 31st, less $9,620, which would make it $55,532.14 instead of $61,387.37 as given in Mr. Traphagen's statement. We are of opinion that by the clear weight of the evidence this sum should be taken as the surplus at the testator's death, and the allotment of the 1153⅓ shares of stock held by the trustees should be made on the basis of an increase of surplus fixed by the difference between that amount and the stipulated surplus at the time of the declaration of the stock dividend.

*By the Court.*—The judgment of the county court is reversed, with directions for further proceedings in accordance with the opinion.