ESTATE OF GERLACH: WOLF and another, Trustees, Respondents, vs. GERLACH, Appellant.

*April 14—May 9, 1922.*

*Wills: Life tenants: Corporate stock: Dividends: Dissolution of corporation: Shrinkage of assets: How borne by life tenant and remaindermen.*

1. If an owner of corporate stock conveys the same to another for a term, the presumption is that he intends the term owner to enjoy all the income incidents of the stock during the term.

2. Until the profits of a corporation are distributed by means of dividends duly declared they are the exclusive property of the corporation, and the stockholders obtain no right or title thereto.

3. Where testator bequeathed corporate stock to trustees to pay the income thereof to his widow during her life and to pay the *corpus* to the children of testator's brother and sister, the life tenant was entitled, on dissolution of the corporation, to receive the amount of dividends, including stock dividends, actually declared by the corporation out of the profits accruing after testator's death, but was not entitled to profits so accruing and which were absorbed by losses and shrinkage of the company's assets and surplus and were never distributed as dividends, the remaindermen being entitled to receive at least the par value of the shares bequeathed.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

The facts in this case were stipulated as follows: William G. Gerlach died in Milwaukee in 1899. His last will and testament was duly admitted to probate and *Emil Wallber* and *Herman F. Wolf* were appointed executors and in 1917 were appointed trustees of the trust estate. The material parts of said will are the following:

"Second. All the rest and residue of my estate, real, personal, and mixed, and wherever situated at the time of my death, I give, devise and bequeath unto George F. Gerlach, *Herman F. Wolf,* and *Emil Wallber*, of Milwaukee, in trust, however, for the following purposes, to wit: To sell and de-

liver, transfer and convey, the whole or any part thereof at such times, and in such manner as to them may seem best; to invest and reinvest the proceeds arising from such sales as in their judgment may be beneficial to my estate, to receive the rents and profits thereof, and to improve, manage, and control the same as fully as I might if living do myself, subject, however, to the provisions, conditions, and limitations hereinafter mentioned."

"Fourth. I direct that out of the rents, issues, and profits of my estate, my trustees pay whatever sums may be required for taxes, repairs, insurance, interest, or other expenses incident to the management of my estate, and after making the payments aforesaid they pay the remainder of such rents, issues, and profits, annually, to my said wife, *Emma F. Gerlach,* for and during her natural life. In case the annual income of my wife shall at any time be reduced to less than $900, my said trustees may, if so requested by. my wife, sell and dispose of such part of my estate as they may deem necessary to secure to her such annual income of $900.

"Fifth. I have no children and, therefore, will and direct that upon the death of my said wife, *Emma F. Gerlach,* all the remainder of my estate shall go to and I hereby give, devise, and bequeath the same in equal shares to the children of my brother, George F. Gerlach, and of my sister, Julia B. Wolf, that is to say, if there are five children altogether in both families (the present number), each child shall be entitled to one fifth; if there are six children, each child shall be entitled to one sixth; or if there are only three, each child shall be entitled to one third. In the event of any of said children dying leaving issue, such issue shall be entitled to the share of their deceased parent by right of representation."

At the time of the death of William G. Gerlach he was the owner of forty-nine shares of stock in the Cream City Brewing Company, each share having a face or par value of $250. At the time of his death the Cream City Brewing Company had a capital stock of $125,000 and a surplus of $294,117. Thereafter out of this surplus or other surplus earnings, stock dividends of ninety-eight shares and

forty-nine shares respectively, representing a stock dividend of two hundred per cent. and one hundred per cent., respectively, upon the original capitalization, were declared and issued to the trustees, and upon a hearing had in the county court of Milwaukee county at the time of the entry of the final decree in said estate it was found and determined that the ninety-eight shares of stock were declared out of earnings which had accrued prior to the death of said William G. Gerlach and the said forty-nine shares were declared out of earnings which had accrued subsequently to the death of William G. Gerlach and were assigned to *Emma F. Gerlach,* the life tenant herein.

The trustees, in their trust inventory, inventoried the 147 shares then held by said trustees at $36,750.

On September 1, 1918, the issued capital stock of said company was $500,000 and its surplus was $380,300.99.

After the dissolution of the corporation and beginning on February 28, 1919, the directors declared liquidating dividends at various times and in various amounts, which at the time of the trial totaled one hundred and ten per cent.

In 1915 Price, Waterhouse & Company made an audit and made corrections in the appreciation, depreciation, and overvalues which resulted in the surplus being reduced in the sum of $109,065.77; thereafter in 1916, 1917, and 1918 large sums were deducted as depreciation. Thus the properties were carried on the books at the real value, less depreciation.

In order to carry out the dissolution and liquidation of the company the directors sold certain properties and assets of the corporation. On March 12, 1919, the directors sold assets, which the appellant contends represented capital or *corpus* and which were inventoried at $344,920.24, for the sum of $95,000; thus this sale alone represented a loss of fixed assets of the corporation amounting to $294,920.24.

On June 20, 1919, another similar sale representing fixed

assets valued at $54,005.41 were sold for $15,000.   On July 1, 1919, another such sale was held and assets of a book value of $17,598.83 were sold for $6,681.05.   On July 1, 1919, the stock of beer, inventoried at $25,542.75, was sold and the full amount received therefor.

The statement of the company issued on February 28, 1919, shows that at that time it had a surplus of $401,763.36, not including the surplus in the bottling department of $50,520.05.

By objections made on the part of *Emma F. Gerlach* to the allowance of the report of the trustees made to the county court of Milwaukee county, the question was raised as to what proportion of the proceeds of the liquidation sale should be paid to the life tenant and the remainderman, respectively.

A jury trial having been demanded, the case was transferred to the circuit court.   The circuit court ruled that the first one hundred per cent. of the liquidating dividend, irrespective of the original source from which the directors received the money, should be paid to and held by the trustees so that the *corpus* of the trust fund would not be depleted, and that all above the first one hundred per cent. should be paid to the life tenant.   From the judgment entered in conformity with such ruling *Emma F. Gerlach* brings this appeal.

*Ernst von Briesen* of Milwaukee, for the appellant.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *William C. Quarles* and *Howard T. Foulkes,* of counsel, all of Milwaukee, and oral argument by *Mr. Foulkes.*

OWEN, J.   The question involved in this case arises by reason of the shrinking of the assets of the brewing company by virtue of prohibition legislation making a continuance of the business on the part of the brewing company unlawful and destroying its value as a going concern.   There

is no doubt that prior to such legislation the brewing com-
pany was in a healthy financial condition, doing a good
business and having a substantial value as a going concern.
It had earned profits subsequent to the death of the testa-
tor which, if distributed in the form of dividends, belonged
to the appellant as life tenant.   A distribution of a one
hundred per cent. stock dividend based on earnings subse-
quent to testator's death had been declared and paid over
to the appellant.   This, however, did not absorb all of the
earnings of the company subsequent to testator's death to
which appellant would have been entitled had dividends
based upon such earnings been declared and paid.  Dividends
on such earnings, not having been declared and paid, re-
mained the property of the company and were carried by it
on its books as accumulation or surplus.  Respondent con-
tends that the shrinking in the value of the assets of the
company by reason of the legislation mentioned should not
be permitted to wipe out the profits of the company, thereby
causing the entire loss resulting from such legislation to be
borne by the life tenant.

It is the settled law of this state that when an owner of
stock conveys the same to another for a term without effi-
ciently manifesting to the contrary, the presumption of fact
is that he intends the term owner to enjoy all the income
incidents of the stock during such term.  .If distributable
and distributed to stockholders during the term, no matter
what form of property embodies it at first, or what changes
occur in form before the distribution occurs, and whether
such income be distributed in the form of cash or a stock
dividend, when so distributed it belongs to the life tenant.
*Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739;
*Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *State ex rel.
Dulaney v. Nygaard,* 174 Wis. 597, 183 N. W. 884.  While
the cases in which this principle has been declared involved
a distribution of profits or income in the nature of a divi-
dend made by a going concern, we see no reason why the

same rule should not apply in the distribution of the proceeds arising from the liquidation of a corporation.

In an extended note reviewing the authorities upon this subject to be found in 12 L. R. A. N. s. 805, the annotator says:

"Logically, it would seem that the respective rights of life tenant and remainderman in extraordinary distributions should be governed by the same principles, whether the distribution is made by a corporation which contemplates a continuance of. its corporate existence and business, or is made in process of liquidation, or in contemplation of consolidation or merger with another corporation."

With this we fully agree, and hold that whatever moneys come into the hands of the trustees as the proceeds of the liquidation of the brewing company which can be said to · represent profits of the business of the company earned during the term of the life tenant shall be paid over by the trustees to the life tenant.

The difficulty in this case is to determine what proportion of the proceeds of the liquidation sale may be so treated. While, during the time that the brewing company was permitted to prosecute its business, profits to a considerable amount were earned by the company out of which dividends might have been declared, such dividends were not declared and such profits were not distributed to the stockholders. It is fundamental that until profits of a corporation are distributed in the form of a dividend or otherwise the stockholder obtains no right or title thereto.   Such profits belong exclusively to the corporation.   They may be retained by the corporation and added to *corpus,* and unless a distribution is made during the term of the life tenant the latter acquires no right or title thereto.   It is also plain that if the earnings of one year are absorbed by the losses of another the loss is that of the life tenant.   It follows logically, it would seem, that where the accumulations during a term are wiped out by a shrinkage in the assets of the cor-

poration due to any reason, whether it be a loss of business, increase of competition, fire, flood, or legislation, as in this instance, the loss is that of the life tenant.    The reason is that the life tenant has no title in or right to the surplus or accumulated profits until the corporation makes distribution thereof.

The losses of a corporation are first charged against the surplus of the corporation, and the corporation remains solvent so long as its original capital is not impaired.    Losses do not impair the capital of a corporation so long as a surplus is available to meet such losses.    Upon a liquidation of a corporation its first duty is to discharge its liabilities. Its capital stock is a liability.    When its liabilities, including those represented by its capital stock, have been paid, the amount remaining may (though we think not necessarily) be considered earnings.    So far as this case is concerned it may be so considered for the reason that no appeal has been taken from that portion of the judgment which directs the trustees to pay all proceeds arising from the liquidation over and above par value of the capital stock to the life tenant.    In the instant case the corporation made no distribution of the earnings.    Before the liquidation of the company the earnings had been lost through a shrinkage in values.    It therefore had no earnings except whatever surplus was left after the discharge of its corporate liabilities.    This surplus is directed by the judgment of the lower court to be paid to the life tenant.    This is all to which the life tenant is entitled.    This, we think, carries out the intention of the testator.

Referring to the rule which has been written into the jurisprudence of this state, adverted to in the beginning of this opinion, to the effect that when an owner of stock conveys the same to another for a term without efficiently manifesting to the contrary the presumption of fact is that he intends the term owner to enjoy all the income incidents of the stock during such term, it should be stated as a corol-

lary that the presumption also is that in case of the liquidation of a corporation the remainderman shall receive the par value of the capital stock of the corporation before any distribution is made to the life tenant. It should not be forgotten that in this case the remainderman sustains a substantial loss even though he be paid the par value of the capital stock. At the time of the death of the testator the brewing company was a going concern. Its earning power was indicated by the fact that at the time of the death of the testator it had accumulations amounting to two hundred per cent. of its capital stock. Since that time it had earned and distributed earnings in the form of a stock dividend to the amount of one hundred per cent. Its intangible assets in the nature of good will must have been of great value. This belonged to *corpus*. *Miller v. Payne*, 150 Wis. 354, 136 N. W. 811. The loss of this element of value, as well as the enhancement of the value of assets from sources other than an accumulation of earnings, falls entirely upon the remainderman. *Miller v. Payne*, 150 Wis. 354, at p. 378 (136 N. W. 811).

Our conclusion is that it was the intention of the testator that upon a dissolution of the corporation the remainderman should first be paid at least the par value of the capital stock and that the life tenant should participate only in the proceeds remaining thereafter. As the trial court awarded all of such earnings to the life tenant, she has no cause to complain of the judgment.

*By the Court.*—Judgment affirmed.