ESTATE OF MATTHEWS: MILWAUKEE PROTESTANT HOME FOR THE AGED and others, Appellants, vs. OBER, Administrator, imp., Respondent.

*October 12, 1932—January 10, 1933.*

110

For the appellants there were briefs by *Edmund B. Shea* and *Fawsett & Shea,* attorneys for the Family Welfare Association; *Douglass Van Dyke,* attorney for the Milwaukee Orphans Asylum; *George B. Skogmo,* attorney for the Wisconsin Humane Society, and *John W. McMillan,* attorney for the Milwaukee Protestant Home for the Aged, all of Milwaukee, and oral argument by *Mr. McMillan.*

For the respondent A. M. Ober there was a brief by *Bloodgood, Stebbins & Bloodgood,* attorneys, and *Albert K. Stebbins* and *Harold Jordan* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

The following opinion was filed November 9, 1932:

ROSENBERRY, C. J. The paragraph of the will of Eschines P. Matthews by which the trust was created is set forth in the margin.[1]

---

[1] "Fifth. I hereby give and bequeath the use and the net income of the remainder of my shares of the capital stock of said Matthews Building Company, now owned by me, to wit: six hundred (600) shares, or the proceeds from the sale thereof should the same be sold before my decease, to my brother, Quincy A. Matthews, to my sister, Laura A. Matthews, and to my sister, Mrs. Martha Ober, of Chagrin Falls, Ohio, and to the survivor or survivors of them, living at the time of my decease, in equal parts, share and share alike, during their lives, and until the decease of the last survivor of them. After the decease of the last survivor of my said brother and sisters, I give and bequeath said six hundred (600) shares of stock, or the proceeds from the sale thereof, should the same be sold as aforesaid, to the following named charitable organizations, of Milwaukee, Wisconsin, in equal parts, share and share alike, to wit: to the Milwaukee Protestant Home for the Aged, Milwaukee Orphans Asylum, Associated Charities of Milwaukee, and Wisconsin Humane Society."

The claims of the residuary beneficiaries are: (1st) that the $11,269.14 in question belongs to the corpus of the trust and therefore to the remaindermen because it was derived wholly from the proceeds of the sale of the Matthews Building Company's capital assets and no part of such sum was paid from the corporation's depreciation reserve; (2d) that even if the amount in question had been derived in whole or in part from the corporation's depreciation reserve, it would nevertheless retain in the hands of the trustee its capital character established when the depreciation fund was set aside by the corporation and would constitute a part of the corpus of the trust estate and belong to the remaindermen.

On the other hand, it is contended by the representative of the last surviving legatee that the depreciation reserve fund lost its capital character and became restored to income for purposes of the present case by reason of the fact that the profit on the sale of the Matthews Building exceeded the total cost of the property.

It appears that the Matthews Building Company purchased the real estate known as the Matthews Building for $240,000. At the time of the sale of the property the books of account of the Matthews Building Company disclosed no surplus earnings nor undivided profits and on that day the property was sold for $1,300,000. Thereafter the Matthews Building Company ceased to do business and proceeded to liquidate its assets. The land and improvements were purchased by the company as a unit and were disposed of by it without separate valuation. The argument of the remaindermen is that when there was charged against current income an amount which was carried to depreciation reserve, it was a sum necessary to make good loss by way of depreciation on the building and it thereby became a capital asset and as such belonged to the remaindermen. The contention of the representative of the surviving legatee

is that the sums charged to depreciation reserve being charged out of income were thereby withheld from distribution by way of dividends; that the corpus of the estate having been sold for a sum largely in excess of the price paid for it, there was in fact as to the whole corpus no depreciation. On the other hand, there was a large enhancement in value, and that the sum carried to depreciation reserve having never been appropriated or incorporated in the building, it never lost its character as income and therefore remained income and should be distributed to the legatee or her representatives.

The question presented involves a liquidating dividend of a corporation which was solvent and against which creditors had no claims. In determining the rights of term owners as against remaindermen this state applies the Pennsylvania or American rule. It does not accept the stamp placed upon the transaction by the corporation nor is it influenced under the circumstances of this case by the fact that it is a cash instead of a stock dividend. Under the so-called American rule, whether an extraordinary cash dividend (which would include a liquidating dividend) or a stock dividend declared during the term of a life tenant is to be considered as income belonging to the life tenant or as corpus belonging to the remainderman depends upon whether or not the fund out of which the dividend is declared is accumulated out of earnings during the term or whether it is derived from income accumulated before the commencement of the term or from appreciation of capital assets.

If the income is distributed or distributable to stockholders during the term, no matter what form it may take or what changes may occur in its form before distribution takes place and irrespective of whether or not the distribution is made in the form of a cash or stock dividend, when it is derived from income earned during the term it belongs

to the life tenant. *Estate of Gerlach,* 177 Wis. 251, 188 N. W. 94. In that case it was expressly held that the rule applied to liquidating dividends.

It is also held that dividends declared out of appreciation of capital assets constitute corpus and are payable to the remaindermen. *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811.

Logically, of course, if the remainderman benefits by the appreciation of capital assets, he should bear the loss consequent upon a depreciation of the same assets. It was so held in *Estate of Gerlach, supra,* but in that case it was found that it was the intent of the testator that the corpus should be preserved intact to the extent of the par value of the capital stock. The loss due to depreciation over and above that amount was held to be the loss of the remainderman.

This leads us to inquire as to the nature of the fund represented by the depreciation reserve account. Depreciation in ordinary use means the loss in value of some destructible property over and above current repairs. 2 Cook, Corporations (8th ed.) p. 1902.

It is not necessary for us in the decision of this case to enter into a discussion of the niceties of accounting in relation to depreciation. It appears that the amount charged to the account in this case was one that was reasonable, fair, and such as customarily charged by those having the administration of similar properties. There is no element of bad faith or of manipulation for ulterior purposes in this transaction. It is undisputed that the amount of the account was withdrawn from current income. The testator provided that the life tenant was to have "the use and net income" of the shares. In determining net income, sound accounting practice requires a withholding of some part of gross income on account of depreciation, the theory being that it is necessary in order to preserve intact that part of the corpus upon which it is computed. If some part of the corpus is

in fact consumed in the operation of earning the income and the income is paid out in dividends without any deduction therefrom, a part of the dividend at least would represent corpus. There is no claim here that any part of this account was used to restore the building. It remained on the books of the company and represented a liability. The ordinary rule is that as between the life tenant and the remainderman, the remainderman is entitled to have a sufficient sum taken from current income to preserve the physical integrity of the corpus. So a life tenant must make all ordinary, reasonable, and necessary repairs to preserve the property and prevent its going to decay or waste. *Niland v. Niland,* 154 Wis. 514, 143 N. W. 170; *Prescott v. Grimes,* 143 Ky. 191, 136 S. W. 206, 33 L. R. A. N. S. 669 and note.

The fact that in accordance with sound accounting practice a sum has been withheld from current earnings and set up in a depreciation account does not under the rule obtaining in this state determine the question. The ultimate question is, Did the income so withheld lose its character as income and, if so, when and how? There is in this case no showing that the building had in fact depreciated in value. There is no claim that any part of the fund had been in any way applied other than by setting it up on the books. It is considered that this is not sufficient to deprive the fund of its character as income. It being current income, it remained income although not distributed by way of a dividend until there was an actual or a constructive incorporation of the fund in the corpus. The sum could not be withheld from income for the purpose of adding it to the corpus but only for the purpose of maintaining or to that extent restoring it. The so-called American rule is not a rule of thumb. Each case requires consideration upon its own facts. Under this rule it may not be determined from a balance sheet that a certain item is income because the assets exceed the liabilities including capital stock. The surplus above capital stock may have been derived from

appreciation of capital assets, in which event it became corpus, or current income may have been devoted to making good a depreciation of capital assets, in which event, there being nothing in the settlement to the contrary, that is a loss chargeable to corpus, or an amount largely in excess of the amount necessary for repairs, or an improper charge for depreciation may have been carried to surplus or to depreciation reserve account, in which event it would remain earnings in the event of liquidation. As is stated in the *Gerlach Case*, all net income earned during the term belongs to the term owner or life tenant irrespective of what form it may thereafter have taken, net income being the amount remaining after proper current charges have been made against gross income.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, with $25 costs, on January 10, 1932.