ESTATE OF BOYLE: FIRST WISCONSIN TRUST COMPANY, Trustee, and others, Appellants, vs. BOYLE and another, Respondents.

*September 10—October 8, 1940.*

For the appellants Marshall & Ilsley Bank and First Wisconsin Trust Company there was a brief by *Hanson, Weinke, O'Neill & Tonjes* of Fond du Lac, and oral argument by *Russell E. Hanson.*

*Fred A. Foster* of Fond du Lac, guardian *ad litem,* for the appellants Madeleine, Henry, and Helen Boyle.

*John P. McGalloway* of Fond du Lac, for the respondents.

WICKHEM, J. The facts in this case are not in dispute, and may be briefly stated. Testatrix died March 13, 1935, leaving as her only child and heir Francis H. Boyle. Her will created two testamentary trusts, substantially equal in amount. First Wisconsin Trust Company and Francis H. Boyle are cotrustees of one trust, and Marshall & Ilsley Bank and Francis H. Boyle are cotrustees of the other. Francis H. Boyle is the life beneficiary of one half the income of the trusts, and the remaining income is directed to be accumulated and added to the corpus of the trust. At her death testatrix owned 5,741 shares of the Northwestern Yeast Company stock. The yeast business had been the foundation of the estate of testatrix, which was appraised at $2,647,883.53. After putting this business upon a profitable basis, testatrix's husband, who was its founder, sold it to Northwestern Yeast Company and took the shares referred to as a part of the purchase price. Prior to 1935 the Northwestern Yeast Company declared and paid regular quarterly dividends at $3 per share. The last of these dividends was paid in December, 1934. In 1935, 1936, and

1937 quarterly dividends were reduced to $2, but paid each quarter, there being no break in the regularity of payments. In the process of its operations the yeast company had developed a large surplus. There is some difference between the findings of the county court and the computations of the trustees as to the amount of this surplus, but the differences are not of importance here. As of January 1, 1935, the company's surplus was $880,271.41. The will of testatrix was admitted to probate April 9, 1935, and John P. McGalloway assumed the office of executor. His administration as executor terminated April 5, 1937. During his administration full and complete accounts were filed by the executor, notice of hearing on the accounts was given to all parties interested by service and publication, and final settlement was had on April 5, 1937, the judgment of final settlement was entered. This judgment was modified on January 25, 1939, to correct minor inaccuracies. Between March 13, 1935, and April 1, 1937, the executor was in possession of the assets of the estate, including the shares of yeast-company stock. During that time he received nine cash dividends, each in the amount of $2 per share, the aggregate being $103,338. The first of the nine dividends was for a quarter preceding the death of testatrix. This was allocated to corpus and the remaining eight dividends distributed as income. Immediately upon final settlement the executor delivered to the trustees the full balance of the estate, and thereafter the trusts were administered by their respective trustees. In June, 1937, a quarterly cash dividend was declared, received by the trustees, and allocated one half to the life beneficiary and one half to corpus. The next quarterly dividend was in September, 1937. It was for the same amount and was paid directly to the trustees. The check was accompanied by a letter calling attention to the adverse state of the yeast business and the decline in earnings both from securities representing the surplus and earnings from

manufacturing operations. The letter concluded with a statement that this year's dividends were paid partly out of surplus. This was not the first time that this sort of a notice had accompanied a dividend check, several of the checks to the executor having been accompanied by a statement that the dividend was paid partly out of surplus. The notice caused the trustees to make an investigation of the books and affairs of the Northwestern Yeast Company to ascertain the book value of the stock and the source of the dividends. They discovered that the dividends which the trustees received in June and September had been paid in part out of surplus as well as the dividends received by the executor during the course of his administration. The investigation disclosed that as of the death of testatrix the surplus of the yeast company was $926,854, and the book value of its stock $115.79; that the dividends paid between March 15, 1935, and April 1, 1937, reduced the surplus to $507,664.56, with a corresponding diminution of the book value to $108.65. In February, 1938, the stockholders of the company voted to reduce the par value of the capital stock from $100 to $50, created a fund equal to the reduction made, designated it as paid-in surplus, and directed that during the year 1938 this be paid to the stockholders as liquidating dividends in the amount of $2 per share.

Paragraph 10 of the codicil of the will reads:

"It is my will further that stock dividends and rights to purchase stock or other securities declared and issued upon corporate securities held in the estate and in the trust estates set up in my said will, whether based upon surplus accumulated before or upon surplus accumulated after my death, . . . shall be treated as principal; and may be held, retained and exercised by my said executor or trustees with the same discretion above defined in respect to corporate stocks and other assets and securities held by me at the time of my death. If, however, such dividends are payable or com-

muted at the stockholders' option in cash, such dividends, if accepted in stock, shall be treated as income."

The county court concluded, (1) that all of the dividends received by the executor during his administration of the estate were ordinary dividends and properly distributed as income, and that such disposition and distribution was approved by a final decree which has never been appealed from and which rendered the matter *res adjudicata*. (2) That the dividends received by the trustees from April 1, 1937, to December 31, 1937, were likewise ordinary dividends to be distributed one half to the life tenant and the other one half added to corpus. (3) That the dividends on the stock since January 1, 1938, being by action of the stockholders derived from paid-in surplus as a result of reducing the par value of the capital stock were return of capital and must be added to corpus so as to maintain the book value of the yeast stock as of December 31, 1937. The question upon this appeal is whether cash dividends, regularly paid out of a surplus produced by earnings but created prior to the death of testatrix, are to be allocated to the life tenant or to the remaindermen. In *Estate of Dittmer*, 197 Wis. 304, 222 N. W. 323, it was pointed out that the intention of the testator, where manifested, must govern the courts in determining what is to be treated as income and what as corpus. The rule approved by the court in the absence of expression of intent by the testator is, (1) that ordinary dividends, regardless of the time when the surplus out of which they were payable was accumulated, should be payable to the life beneficiary, and (2) extraordinary dividends, payable from the accumulated earnings of the company, whether in cash or stock, belong to the life beneficiary unless they intrench in whole or in part on the capital of the trust fund as received from the testator or maker of the trust, in which case they should be apportioned between the

trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund. This rule was followed in *Will of Jenkins,* 199 Wis. 131, 225 N. W. 733. It may be taken as established in this state that in the absence of directions in the will to the contrary, ordinary cash dividends are considered as income and belong to the life tenant.

We are cited to the following cases as intimating or establishing a different rule: *Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739; *Pabst v. Goodrich,* 133 Wis. 43, 113 N. W. 398; *Estate of Wells,* 156 Wis. 294, 144 N. W. 174; *Will of Barron,* 163 Wis. 275, 155 N. W. 1087; *Estate of Matthews,* 210 Wis. 109, 245 N. W. 122; *Estate of Gerlach,* 177 Wis. 251, 188 N. W. 94; *State ex rel. Coykendal v. Karel,* 215 Wis. 505, 255 N. W. 132. We have examined these cases carefully but do not deem it necessary to extend this opinion by a detailed consideration of each. Generally speaking, the cases involved extraordinary dividends, or situations where the will had indicated the testator's intention as to what would constitute income, or the parties had stipulated as to the apportionment. While some language may be isolated from these decisions and, so isolated, may give color to the claim that ordinary dividends payable out of surplus earned prior to the creation of a trust belonged to corpus, it is evident that the court had in mind extraordinary dividends. Wisconsin has followed the Pennsylvania or American rule, and under this rule ordinary dividends go to the life tenant as income and no attempt is made to discover the source of such dividends. As pointed out by Professor Bogert in 4 Trusts and Trustees, p. 2446, this is not entirely consistent with the treatment of extraordinary dividends under the same rule and is grounded on the practical consideration that ordinary dividends are normally declared out of earned income and that frequently

they are not large enough to warrant a burdensome investigation by the trustee into their source.

The question is whether the dividends paid up to January 1, 1938, are such dividends. An ordinary dividend, as stated by Bogert, 4 Trusts and Trustees, p. 2445, § 844, is one which in view of the charter and by-laws, time and declaration of payment, amount, and other circumstances is in harmony with the customary practices of the corporation. In 1 Restatement, Trusts, p. 701, § 236 (a), comment c, a dividend is stated to be ordinary or extraordinary according to the circumstances of the case. The following circumstances are deemed of importance in determining what kind of dividend is involved:

"(1) Whether similar dividends have been declared with regularity in the past.

"(2) Whether such dividends are regularly paid out of current earnings.

"(3) The frequency with which such dividends are declared.

"(4) The size of the dividend in relation to the market value of the shares at the time of the creation of the trust.

"(5) The designation, if any, placed upon it by the directors of the corporation.

"(6) The source of the earnings from which the distribution is made."

It is plain to us that the dividends involved here conform to Professor Bogert's definition of ordinary dividends and that there are present four of the six important indicia of such dividends set forth in the Restatement. These were cash dividends paid with great regularity and at frequent intervals over a period of years. The size of the dividends is normal, and they appear to have been regarded as ordinary dividends and so designated by the directors. It is true that the dividends are not wholly from current earnings but are in part from surplus. Standing alone this circumstance does not render the dividend extraordinary from the

standpoint of the corporation. Paying regular dividends in whole or part out of surplus earnings in years when the current earnings are not sufficient to meet a regular dividend is an ordinary corporate procedure.

The executor contends that the provisions of paragraph 10 of the codicil are conclusive no matter what view is entertained as to the character of the dividends. It has heretofore been pointed out that the intention of the testatrix governs as to what is to be treated as corpus and what as income. Paragraph 10 of the codicil provides that all stock dividends and rights to purchase stock are to be treated as corpus whether based on surplus accumulated before or after her death, but that if *such* dividends are payable or commuted at the stockholders' option in cash, they shall, even if accepted in stock, be treated as income.

The trustees suggest that the whole paragraph is immaterial because it relates entirely to stock dividends and various purchase rights and not to ordinary dividends. It is manifest that paragraph 10 either determines the controversy favorably to the life *cestui* or does not affect it at all. In the latter event, the rules heretofore discussed completely dispose of the matter. In view of this there is no present necessity for a construction of the paragraph.

The trustees are also concerned in this case as to what book value, if any, they are required to maintain. No specific advice in terms of dollars and cents can be given in this respect. The trustees are required to make proper allocation of dividends to corpus or income, and, if this is done, appear to us to have no further responsibility with respect to book value. Should the corporation discontinue the liquidating dividends and return to a system of ordinary cash dividends payable out of earnings or surplus earnings, the trustees would simply allocate these to income, leaving the book value to go to such sum as that allocation would produce. If the system of continuing liquidating dividends

continues, the book value necessarily will be diminished by the amount of these dividends, but this will make no difference because the dividends will be allocated to corpus. It seems to us that this is not a problem of any consequence in this case.

The final request for instructions is upon the question whether "earnings from securities and profits from the sale of securities are to be classified as corpus or income." The question relates to the fact that the surplus of the yeast company is invested in securities which are interest or dividend bearing and which are occasionally sold at a profit. As stated, the question is immaterial here. The question is whether a dividend payable in cash out of such earnings or profits must be allocated to income by the trustees. The answer must be in the affirmative, provided the dividend is not extraordinary in character. If the surplus itself may be liquidated and paid out in ordinary cash dividends, so also may its earnings and increases produced by the liquidation. 4 Bogert, Trusts and Trustees, p. 2461, § 849. What is here said relates to actual earnings and profits. It is probably true, although it is not necessary to decide the point, that a cash dividend founded upon a mere markup of corporate assets to produce a surplus would be extraordinary in character. *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *Welch v. Welch, ante,* p. 282, 290 N. W. 758, 293 N. W. 150. For the foregoing reasons, we conclude that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.