WILL OF ALLIS: KUDER and others, by Guardian *ad litem,* Appellants, v. SAWYER, Respondent: FIRST WISCONSIN TRUST COMPANY, Petitioner.

*December 1, 1958—January 2, 1959.*

For the appellants there were briefs by *Ralph M. Hoyt,* attorney, and *Shea & Hoyt* of counsel, all of Milwaukee, and oral argument by *Ralph M. Hoyt.*

For the respondent there was a brief by *Arthur T. Spence,* attorney, and *Spence & Connolly* of counsel, all of Milwaukee, and oral argument by *Arthur T. Spence.*

Briefs were filed by *William H. Spohn,* attorney, and *Robert B. McConnell* of counsel, both of Madison, as *amici curiae.*

CURRIE, J. That part of the order appealed from, which directs that $83.75 of bond interest be allocated to principal in order to amortize the premium paid above par in the purchase of the bonds, is in favor of the remaindermen beneficiaries and against the interests of the life beneficiary. Therefore, the guardian *ad litem* is not a *"party aggrieved"* by such portion of the order, and cannot appeal therefrom. Sec. 274.10, Stats., and *Estate of Bryngelson* (1941), 237 Wis. 7, 11, 296 N. W. 63.

We deem that the only remaining issue before this court is whether sec. 231.40 (12), Stats., which makes Wisconsin's Uniform Principal and Income Act applicable to estates

of remaindermen in existence at the time of the passage of the act, is unconstitutional as applied to stock dividends received subsequent to the passage of the act by the trustee of a previously existing trust. Counsel for the life beneficiary, Mrs. Sawyer, contend that such subsection is unconstitutional as applied to such stock dividends on the ground that it impairs vested property rights of the life beneficiary contrary to the "due process" clause of the Fourteenth amendment of the United States constitution.[1]

Over the years there has been a wide divergence of opinion among the courts of this country as to whether stock dividends received by a trustee of a trust constitute income or corpus. The two principal rules for allocating stock dividends that have competed for acceptance by courts of the various jurisdictions are the so-called Massachusetts and Pennsylvania rules.

This court in the case of *Soehnlein v. Soehnlein* (1911), 146 Wis. 330, 131 N. W. 739, in a four-to-three decision adopted the Pennsylvania rule in preference to the Massachusetts rule. Such rule has been applied in a number of subsequent decisions.[2]

The Pennsylvania rule inquires as to the time relative to the commencement of the life interest covered by the accumu-

---

[1] Counsel for the life beneficiary also contend that sec. 231.40 (12), Stats., contravenes sec. 12, art. I, Const., which provides that no *ex post facto* law, nor any law impairing the obligation of contracts shall ever be passed. Sec. 231.40 (12) is not an *ex post facto* law because it does not pertain to criminal prosecution. *State ex rel. Prahlow v. Milwaukee* (1947), 251 Wis. 521, 527, 30 N. W. (2d) 260. Neither does it impair the obligation of a contract because a testamentary trust is not a contract.

[2] *Miller v. Payne* (1912), 150 Wis. 354, 136 N. W. 811; *Estate of Merrill* (1927), 193 Wis. 84, 213 N. W. 641; *Will of Jenkins* (1929), 199 Wis. 131, 225 N. W. 733; *Estate of Matthews* (1933), 210 Wis. 109, 245 N. W. 122; *Estate of Paddock* (1933), 213 Wis. 409, 251 N. W. 229; and *Estate of Boyle* (1940), 235 Wis. 591, 294 N. W. 29.

lation of earnings from which the stock dividend was made; and, if it is ascertained that the entire dividend was earned before the commencement of the life interest, the entire dividend is awarded to corpus; and, if it is ascertained that the entire dividend was earned after the commencement and during the continuance of the life interest, the entire dividend is awarded to income; and, if it is ascertained that the dividend was paid from a fund accumulated partly before and partly after the commencement of the life interest, the dividend is apportioned between the life tenant and the remaindermen. It will thus be seen that such rule places great importance upon corporate bookkeeping. Under such rule it becomes incumbent upon the trustee to obtain balance sheets of the corporation of a date immediately preceding and immediately following the declaration of each stock dividend received to see how much of the dividend has been charged to capital and capital surplus and how much to earned surplus and undivided profits. If any part was charged to earned surplus or undivided profits, then it will become the duty of the trustee to obtain corporate balance sheets and profit-and-loss statements covering the entire period that the particular corporate stock has constituted an asset of the trust. This likely may prove to be an onerous burden in many cases.

On the other hand, under the Massachusetts rule, as now embodied in sec. 231.40 (5) (a), Stats., all stock dividends received by a trustee are deemed to be principal. The reasons which prompted the National Conference of Commissioners on Uniform State Laws to adopt the Massachusetts rule in drafting the Uniform Principal and Income Act are stated in the commissioners' prefatory note as follows (9B Uniform Laws Anno., p. 366) :

"The aim followed in the act is that of as simple and convenient administration of the estate as is consistent with fairness to all beneficiaries. It is felt, too, that workable rules

are after all nearest the settlor's probable intent, for he has not probably contemplated extensive and detailed bookkeeping adjustments of the property he has destined for his donees. When the first draft of the act was presented, the conference voted to follow the so-called Massachusetts rule of awarding cash dividends on corporate stock to income and share dividends to principal, thereby rejecting the Pennsylvania rule, or one of the several variations of it, requiring some apportionment between the two funds. Experience has shown that, however praiseworthy the intent, the latter rule is unworkable, since neither trustee nor court has the means to value the corporate assets in such way as to secure the fair adjustment aimed at. Consequently the majority of the large commercial states have already favored the former and more-convenient rule, which is stated in section five below."

The American Law Institute adopted the Pennsylvania rule in the original Restatement, 1 Trusts, p. 701, sec. 236 (b), issued in 1935. By 1947 the trend away from the Pennsylvania rule and toward the Massachusetts rule was so strong that the Institute reversed its position and promulgated a revised sec. 236 (b) adopting the Massachusetts rule. Restatement, 1948 Supp., 1 Trusts, p. 940, sec. 236 (b).

If this court had seen fit by court decision to reverse the rule of the *Soehnlein Case* and adopt the Massachusetts rule, without a caveat that the newly adopted rule should not apply to pre-existing trusts, no constitutional problem would be presented. This was made clear by the United States supreme court in an opinion written by Mr. Chief Justice TAFT in *Tidal Oil Co. v. Flanagan* (1924), 263 U. S. 444, 44 Sup. Ct. 197, 68 L. Ed. 382. It was therein held that the mere fact, that a state supreme court decides against a party's claim of property or contract right by reversing its earlier decision of the law applicable to such cases, does not deprive him of his property without due process of law nor

amount to the passing of a law impairing the obligation of a contract.[3]

Does the fact, that the prior rule adopted by court decision is reversed by a later legislative enactment made applicable to existing trusts, result in an unconstitutional impairment of existing property rights? We think not if the prior rule related to a matter of future trust administration and lay in a debatable field where there existed a divergence of opinion as to which of two or more rules is the better or more socially desirable. For the purpose of illustrating the convincing argument which can be advanced in favor of the contention that a stock dividend constitutes principal and not income, we quote from a recent decision by the Oregon supreme court in *Stipe v. First Nat. Bank* (1956), 208 Or. 251, 274, 301 Pac. (2d) 175, 186, as follows:

"Generally speaking, stock dividends are treated as principal accretions rather than as income. . . .

"A stock dividend takes nothing from the property of the corporation and adds nothing to the interests of the shareholders. The property of the corporation is not diminished. The stockholders' interests are not increased. Their proportional interests remain the same. The only change is in the evidence which represents a given stockholder's interest, that is, the new shares representing the same proportional interest that the original shares represented before the issue of the stock dividend. In short, the corporation is no poorer and the stockholder is no richer than they were before. A stock dividend is, therefore, not in any true sense

[3] Such a holding is supported by the prevailing orthodox theory of the force of judicial precedents. Under such theory, when a prior decision is overruled, " 'it never was the law, and the later pronouncement is regarded as the law from the beginning.' " *Estate of Bray* (1950), 257 Wis. 507, 509a, 44 N. W. (2d) 245, 45 N. W. (2d) 72; and Salmond, Jurisprudence (11th ed.), pp. 167, 168, sec. 54. For a criticism of such theory, see Gray, Nature and Sources of the Law (2d ed.), pp. 231–233, 256–259; and HOLMES, J., dissenting in *Kuhn v. Fairmont Coal Co.* (1910), 215 U. S. 349, 371, 30 Sup. Ct. 140, 54 L. Ed. 228.

a dividend at all. Its issuance is, in the last analysis nothing more than an incident or process in corporation bookkeeping."

A similar view had been expressed in a number of court decisions prior to the execution by testatrix in 1921 of her will in the instant case. One instance of such is *Eisner v. Macomber* (1920), 252 U. S. 189, 211, 40 Sup. Ct. 189, 64 L. Ed. 521. With the widely divergent views prevailing as to the respective merits of the Pennsylvania and Massachusetts rules, we do not believe that the testatrix by using the term "income" in her will thereby adopted the Pennsylvania rule with respect to stock dividends. If she, or the draftsman of the will, gave any thought to the question of the allocation of stock dividends between the life beneficiaries and the remaindermen, we deem it logical to assume that it was intended that such allocation should be made in accordance with the law on the subject from time to time established by court decision or legislative enactment. If this were not the case, it would have been a simple matter to have inserted a sentence in the will which expressly provided the method of allocating stock dividends. We, therefore, do not construe the word "income," as it appears in testatrix's will, as embodying any specific rule with respect to the allocation of stock dividends to be received in the future by the trustee.

Our conclusion in this respect is supported by the recent case of *Farmers Bank & Capital Trust Co. v. Hulette* (Ky. 1956), 293 S. W. (2d) 458. That case overruled a prior decision of the Kentucky court which had held liquidating dividends of a corporation to be income. Answering the argument that the previous rule was a rule of property which gave rise to a vested interest in the life beneficiary, the court stated (pp. 462, 463) :

"It must be borne in mind that we are interpreting the rights of parties as of today. Their rights must be governed by what we consider as current sound principles of law. In the absence of any provisions in the will which could lead to a different interpretation, we must presume the testatrix intended any legal difficulties of construction arising under her will to be solved according to the prevailing legal principles applicable to changed conditions. . . .

". . . no one could claim a vested interest in the liquidating distribution of the Kentucky Concrete Pipe Company prior to 1954. Thus, we are confronted with a question of construction of the will which arose only upon the dissolution of the corporation. We are asked to construe the word 'income' as it relates to the acts of the corporation in 1954. To say that the lifeless hand of Mrs. Boggs [the testatrix] should bind us to a legal concept of 'income,' as it existed in her lifetime, in other lawsuits is asking too much. The function of courts in seeking justice in the light of changing times and concepts would largely be stultified if the legal effect of words used in a will in one generation should create a vested right in that construction with respect to other wills and other parties."

We also deem that our own decision in *Will of Yates* (1951), 259 Wis. 263, 265, 48 N. W. (2d) 601, is also in point as to whether the word "income" as used in testatrix's will must be so construed as to have frozen into it the Pennsylvania rule with respect to the allocation of stock dividends as adopted by the court in the *Soehnlein Case*. The Yates will provided that investments should be made only in "securities authorized by the laws of the state of Wisconsin for the investment of trust funds." It was held that that meant the laws of Wisconsin as from time to time amended, and not as they stood at the time of the drafting of the will or the death of the testator Yates.

It is fundamental that the life beneficiary possessed no vested property right in the earnings of a corporation, shares

of whose stock constituted part of the portfolio of investments of the trust at the time of the enactment of the Wisconsin Uniform Principal and Income Act, prior to a declaration of a dividend by the board of directors payable therefrom. *Estate of Gerlach* (1922), 177 Wis. 251, 256, 188 N. W. 94. We consider it to be equally clear that she also has no vested property right in the rule with respect to the allocation of corporate stock dividends, which had been established by court decision and was in effect at the time of the death of the testatrix. Therefore, it is our considered judgment that the legislature could change such rule with respect to any stock dividends subsequently declared without violating the due-process clause of the Fourteenth amendment.

We are cognizant of the fact that the Pennsylvania court has reached the opposite result with respect to the same constitutional question in *Estate of Crawford* (1949), 362 Pa. 458, 67 Atl. (2d) 124, and in *In re Warden Trust* (1955), 382 Pa. 311, 115 Atl. (2d) 159. We also find that the New Jersey courts have cited with approval the holding of the Pennsylvania court in *Estate of Crawford, supra,* in *Estate of Fera* (1958), 26 N. J. 131, 139 Atl. (2d) 23, and in *Estate of Wehrhane* (1956), 41 N. J. Super. 158, 124 Atl. (2d) 334. While this court has the greatest respect for the Pennsylvania and New Jersey courts, we are not persuaded that their holdings on the instant issue of constitutional law are correct.

The county court of Sauk county in Will of Nishan (decided April 9, 1958), was recently faced with the identical question which confronted the trial court in the instant case, *i.e.,* is sec. 231.40 (12), Stats., constitutional as applied to stock dividends received by a testamentary trustee of a prior-existing trust subsequent to the enactment of the Wisconsin Uniform Principal and Income Act? That court concluded that such section is constitutional as applied to such stock dividends. Through the courtesy of counsel *amici curiae,*

Judge GOLLMAR'S memorandum decision in that case was printed as an appendix to their brief. We, therefore, in the writing of this opinion, have had the benefit thereof as well as the equally carefully written memorandum decision of Judge MUDROCH in the instant case.

*By the Court.*—Paragraph No. 1 of the order appealed from, relating to the allocation of the stock dividend of the Texas Company, is reversed, and the cause is remanded for further proceedings consistent with this opinion.