Opinion
 

 TURNER, P. J.—
 

 Introduction
 

 This is an appeal by Robyn and Jolie Stahl (the Stahls) from an order instructing the Wells Fargo Bank, N.A., a cotrustee in the trust (the trust) established for the primary benefit of Elaine D. Rogers under the will of John M. Stahl, dated December 19, 1966, to allocate items between income and principal. The Stahls contend the trial court erred in determining, contrary to Probate Code sections 16303, subdivision (b)(ll) and 16312, subdivision (b)(2),
 
 [1]
 
 that amounts held by a trustee as a depreciation reserve constituted income rather than principal. We reverse.
 

 Background
 

 The Stahls are the trustor’s daughters and the remainder beneficiaries of the trust. Elaine D. Rodgers is the income beneficiary. The net income of the
 
 *399
 
 trust is paid to Ms. Rodgers during her lifetime and, upon her death, the balance of the trust estate then remaining is divided into three equal shares. One share is paid in equal subshares to certain charitable, nonprofit, and educational entities. The remaining two shares are to be held in trust for the trustor’s daughters, during their lifetimes, and upon their deaths, are transferred to the organizations receiving the first share. The trust owned certain real property. Beginning in 1985, and thereafter, the cotrustees of the trust set aside reserves for depreciation and maintenance of the property. The reserves were charged against the income of the trust as an ordinary expense.
 

 On August 15, 1996, Wells Fargo petitioned the court for instructions regarding allocation of items between income and principal. At that time, the depreciation reserve had $196,588.92 in cash set aside. The maintenance reserve had $111,072.15 in cash set aside. On November 27, 1996, the court ordered that all interest income from the promissory note held by the trust relating to the sale of the property was to be allocated to income. The entire depreciation and maintenance reserves were allocated to trust income. The Stahls filed a timely appeal from the November 27, 1996, order but challenge only that portion of it which allocates the depreciation reserve to trust income.
 

 Discussion
 

 The issue in this appeal is whether the trial court properly allocated the funds in the depreciation reserve to income notwithstanding section 16303, subdivision (b)(ll) which provides: “Principal is the property which has been set aside by the owner or the person legally empowered so that it is held in trust eventually to be delivered to a remainder beneficiary while the return or use of the principal is in the meantime taken or received by or held for accumulation for an income beneficiary. Principal includes the follow- - ing: [¶] . . . [¶] Any allowances for depreciation established under . . . paragraph (2) of subdivision (b) of Section 16312.” Also, of consequence to the resolution of this appeal is the statute relied upon by the cotrustee, section 16312, subdivision (b)(2) which provides: “The following charges shall be made against income: [¶] . . . [¶] The trustee in its discretion may make a reasonable allowance for depreciation on property subject to depreciation under generally accepted accounting principles, but no allowance shall be made for depreciation of that portion of any real property used by a beneficiary as a residence.”
 

 The Stahls contend the trial court improperly allocated the amount in the depreciation reserve to trust income in violation of section 16303, subdivision (b)(ll) which clearly and unequivocally provides
 
 any
 
 allowance for
 
 *400
 
 depreciation is principal. The income beneficiary counters with the argument that section 16303, subdivision (b)(ll) is ambiguous. As a result, the cotrustee argues it had discretion under section 16312, subdivision (b)(2) to determine the depreciation allowance was income and not principal because the value of the property did not, in fact, depreciate.
 

 Resolution of this issue requires an interpretation of two statutes. The interpretation of statutes is a question of law and a reviewing court is not bound by the trial judge’s analysis.
 
 (Burden
 
 v.
 
 Snowden
 
 (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672];
 
 California Teachers Assn.
 
 v.
 
 San Diego Community College Dist.
 
 (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) A trial or appellate court’s duties in interpreting a statute are as follows: “When interpreting a statute our primary task is to determine the Legislature’s intent. [Citation.] In doing so, [the court turns] first to the statutory language, since the words the Legislature chose are the best indicators of its intent.”
 
 (Freedom Newpapers, Inc.
 
 v.
 
 Orange County Employees Retirement System
 
 (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; accord,
 
 California Teachers Assn.
 
 v.
 
 Governing Bd. of Rialto Unified School Dist.
 
 (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175];
 
 People
 
 v.
 
 Jones
 
 (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The Supreme Court has further noted, “ ‘If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature ....’”
 
 (Delaney
 
 v.
 
 Superior Court
 
 (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934];
 
 Lungren
 
 v.
 
 Deukmejian
 
 (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Furthermore, the literal meaning of a statute must be in accord with its purpose, as our Supreme Court noted in
 
 Lakin
 
 v.
 
 Watkins Associated Industries
 
 (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: “We are not •prohibited ‘from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute], . . .’” (Accord,
 
 California School Employees Assn.
 
 v.
 
 Governing Board
 
 (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) In
 
 Lungren
 
 v.
 
 Deukmejian, supra,
 
 45 Cal.3d at page 735, our Supreme Court further concluded: “The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the
 
 *401
 
 statutory scheme [citation] . . . Moreover, where two statutes appear to be in conflict, a more specific statute controls over a more general one.
 
 (Woods
 
 v.
 
 Young
 
 (1991) 53 Cal.3d 315, 324 [279 Cal.Rptr. 613, 807 P.2d 455];
 
 Cumero
 
 v.
 
 Public Employment Relations Bd.
 
 (1989) 49 Cal.3d 575, 587 [262 Cal.Rptr. 46,' 778 P.2d 174].)
 

 Here, section 16303, subdivision (b)(ll) provides that “principal” includes “[a]ny allowances for depreciation” which are established under the trustee’s discretionary powers to establish from income a reserve for property subject to depreciation as provided in section 16312. The income beneficiary claims that this language is ambiguous and the trial court properly refused to give the statute a literal interpretation. In allocating the depreciation reserve to income, the trial court stated: “I think I understand what the California Code section was intended to do. If you look at it literally, then the order doesn’t carry that out. But I’m looking at the intention of what I believe the California statute is.” According to the income beneficiary and the cotrustee, Wells Fargo, a literal construction of section 16303, subdivision (b)(ll) would conflict with the Legislature’s intent that the trustee have discretion under section 16312, subdivision (b)(2) to distribute the depreciation reserve as income in the event the accumulation of funds was unwarranted because the property, in fact, did not depreciate. The income beneficiary further argues the trial court properly interpreted the statutes to mean that the “the trustee clearly has the appropriate discretion under these same statutes to reverse that tentative reserve from income when the facts, upon sale as here, demonstrate that no depreciation reserve from income was or is necessary and that any allocation of depreciation as a deduction against income was and is in fact unwarranted.”
 

 We agree that section 16312, subdivision (b)(2) clearly permits the trustee to make the determination that a depreciation allowance should be set aside. However, we disagree that sections 16303, subdivision (b)(ll) and 16312, subdivision (b)(2) must be interpreted to mean that once the funds are set aside the trustee then retains discretion to allocate the funds to income should it subsequently be determined no depreciation “in fact” occurred. First and foremost, section 16303, subdivision (b)(ll) clearly and unequivocally states that principal includes “[a]ny allowances for depreciation.” When unambiguous language is used by the Legislature, it is the best indicator of legislative intent.
 
 (California Teachers Assn.
 
 v.
 
 Governing Bd. of Rialto Unified School Dist., supra,
 
 14 Cal.4th at p. 632;
 
 Freedom Newspapers, Inc.
 
 v.
 
 Orange County Employees Retirement System, supra,
 
 6 Cal.4th at p. 826.) Section 16303, subdivision (b)(ll) provides that once those funds are so allocated, they are “principal” and does not contain the proviso that the funds can subsequently be characterized as income in the event there was no depreciation.
 

 
 *402
 
 Second, in order to interpret sections 16303, subdivision (b)(ll) and 16312, subdivision (b)(2) as suggested by the income beneficiary and the cotrustee to allow the trustee to allocate the allowance to income if, in fact, there is no depreciation would require us to read additional words into both statutes. Citing Code of Civil Procedure section 1859, the California Supreme Court has noted in this regard: “ ‘If there is no ambiguity in the language of the statute, “then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.” ’
 
 (Lennane
 
 v.
 
 Franchise Tax Bd.
 
 (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) Therefore, if a statute is unambiguous, it must be applied according to its terms. Judicial construction is neither necessary nor permitted.”
 
 (Ventura County Deputy Sheriffs’ Assn.
 
 v.
 
 Board of Retirement
 
 (1997) 16 Cal.4th 483, 492-493 [66 Cal.Rptr.2d 304, 940 P.2d 891].) Further pertinent to the cotrustee’s argument, that would require us to interpret the two statutes so as to disregard the clear language of section 16303, subdivision (b)(ll), is the following language of the California Supreme Court: “As this court has often recognized, ‘ “the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government....’”
 
 (California Teachers Assn.
 
 v.
 
 Governing Bd. of Rialto Unified School Dist.
 
 (1997) 14 Cal.4th 627, 633, [59 Cal.Rptr.2d 671, 927 P.2d 1175], quoting
 
 Kopp
 
 v.
 
 Fair Pol. Practices Com.
 
 (1995) 11 Cal.4th 607, 675 [47 Cal.Rptr.2d 108, 905 P.2d 1248].) ‘It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. “This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.” ’ (14 Cal.4th at p. 633, quoting
 
 Seaboard Acceptance Corp.
 
 v.
 
 Shay
 
 (1931) 214 Cal. 361, 365 [5 P.2d 882].)”
 
 (Stop Youth Addiction, Inc.
 
 v.
 
 Lucky Stores, Inc.
 
 (1998) 17 Cal.4th 553, 578 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) (lc) In the present case, the cotrustee is attempting to have this court do just that—insert language in a statute that the Legislature has not chosen to utilize.
 

 Third, even if statutory construction were necessary, the result would be the same—the depreciation allowance would be allocated to principal. We briefly examine the legislative history of the statutes providing for a depreciation allowance. California’s original Principal and Income Act was enacted in California in 1941 and did not contain any provision regarding allowances for depreciation. (Stats. 1941, ch. 898, § 1, p. 2476.) When the Principal and Income Act was moved to former sections 730.03 through 730.15 of the Civil Code in 1953, there was likewise no reference to depreciation allowances. (Stats. 1953, ch. 37, § 1, pp. 666-674.) The first statutory reference to an allowance for depreciation occurred in 1967 by
 
 *403
 
 passage of Assembly Bill No. 839, 1967 Regular Session, which added former Civil Code section 730.03, subdivision (b)(10), from which section 16303, subdivision (b)(ll) is derived. (Stats. 1967, ch. 1508, §2, pp. 3576-3583.) Assembly Bill No. 839 was introduced by Assemblymember Edwin L. Z’berg for the California Commissioner on Uniform State Laws to enact the revised Uniform Principal and Income Act. The purpose of the 1967 revisions was to conform the California’s Principal and Income Law to the 1962 revisions of the uniform act “in the interests of uniformity among state laws on the subject.” (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 839 (1967 Reg. Sess.) as amended Apr. 12, 1967.) The purpose of enacting the 1967 statute to provide for the establishment of a depreciation reserve was to address the issue of whether the trustee had the duty to do so in order to preserve the value of the trust for the remainder beneficiary. This issue had arisen in the case of
 
 Estate of Kelley
 
 (1965) 63 Cal.2d 679, 688 [47 Cal.Rptr. 897, 408 P.2d 353] wherein the California Supreme Court concluded the trustee had a duty to set aside from receipts an allowance to preserve the corpus given that, normally although not in all cases, real property would age and become in need of repairs. (See State Bar of Cal., Rep. on Assem. Bill No. 839 (1967 Reg. Sess.) exhibit D, pp. 1-4.) The 1967 enactment of Civil Code former section 730.14 legislatively abrogated
 
 Estate of Kelley, supra,
 
 63 Cal.2d at page 688, to provide that unless the trust instrument expressly required it, the trustee was not required to set aside an allowance but had the discretion to do so. (See Review of Selected 1967 Code Legislation (Cont.Ed.Bar 1967) pp. 30-31.) This discretion has been retained in section 16312, subdivision (b)(2). However, there is nothing in section 16303, subdivision (b)(ll) or 16312, subdivision (b)(2) or their legislative histories which suggests that because a trustee retains discretion to set aside an allowance for depreciation it then has the discretion to later allocate the funds to income. Section 16303, subdivision (b)(ll) clearly and unequivocally provides that “[p]rincipal is . . . [¶] . . . [¶] [a]ny allowances for depreciation.”
 

 Finally, there is no merit to the contention we should follow the 1932 Wisconsin Supreme Court decision in the case of
 
 In re Matthews’ Estate
 
 (1932) 210 Wis. 109 [245 N.W. 122, 124], which has been cited in at least two legal treatises, Scott on Trusts (4th ed. 1988) section 239.4, pages 206-207 and Bogert, Trust and Trustees (2d ed. 1981) sections 841, 857, pages 547, footnote 4, and 651. In
 
 Matthews’ Estate,
 
 the Wisconsin Supreme Court determined that the life tenant of a testamentary trust was entitled to the amounts set aside in a depreciation reserve account after the sale of the building and the property did not depreciate. The court stated: “This leads us to inquire as to the nature of the fund represented by the depreciation reserve account. Depreciation in ordinary use means the loss in value of some destructible property over and above the current repairs. [Citation.] [¶] It is
 
 *404
 
 not necessary for us in the decision of this case to enter into a discussion of the niceties of accounting in relation to depreciation. It appears that the amount charged to the account in this case was one that was reasonable, fair, and such as customarily charged by those having the administration of similar properties. There is no element of bad faith or of manipulation for ulterior purposes in this transaction. It is undisputed that the amount of the account was withdrawn from current income. The testator provided that the life tenant was to have ‘the use and net income’ of the shares. In determining net income, sound accounting practice requires a withholding of some part of gross income on account of depreciation; the theory being that it is necessary in order to preserve intact that part of the corpus upon which it is computed. If some part of the corpus is in fact consumed in the operation of earning the income and the income is paid out in dividends without any deduction therefrom, a part of the dividend at least would represent corpus. There is no claim here that any part of this account was used to restore the building. It remained on the books of the company and represented a liability. The ordinary rule is that, as against the life tenant and the remainderman, the remainderman is entitled to have a sufficient sum taken from current income to preserve the physical integrity of the corpus. So a life tenant must make all ordinary, reasonable, and necessary repairs to preserve the property and prevent its going to decay or waste. [Citations.] [¶] The fact that in accordance with sound accounting practice a sum has been withheld from current earnings and set up in a depreciation account does not under the rule obtaining in this state determine the question. The ultimate question is, Did the income so withheld lose its character as income, and, if so, when and how? There is in this case no showing that the building had in fact depreciated in value. There is no claim that any part of the fund had been in any way applied other than by setting it up on the books. It is considered that this is not sufficient to deprive the fund of its character as income. It being current income, it remained income although not distributed by way of a dividend until there was an actual or a constructive incorporation of the fund in the corpus. The sum could not be withheld from income for the purpose of adding it to the corpus, but only for the purpose of maintaining or to that extent restoring it. The so-called American rule is not a rule of thumb. Each case requires consideration upon its own facts. Under this rule it may not be determined from a balance sheet that a certain item is income because the assets exceed the liabilities including capital stock. The surplus above capital stock may have been derived from appreciation of capital assets, in which event it became corpus, or current income may have been devoted to making good a depreciation of capital assets, in which event, there being nothing in the settlement to the contrary, that is a loss chargeable to corpus, or an amount largely in excess of the amount necessary for repairs or an improper charge for depreciation may have been carried to surplus or to depreciation
 
 *405
 
 reserve account, in which event it would remain earnings in the event of liquidation. . . . [A]ll net income earned during the term belongs to the term owner or life tenant irrespective of what form it may thereafter have taken; net income being the amount remaining after proper current charges have been made against gross income.”
 
 (In re Matthews’ Estate, supra,
 
 245 N.W. at p. 124.)
 

 Matthews’ Estate
 
 thus determined that the allowance for depreciation retains its character as income. However, notwithstanding this 1932 Wisconsin case, the California Legislature has determined in section 16303, subdivision (b)(ll) that such sums are characterized as “principal” without limitation. The statute states that “principal” includes “any allowances for depreciation.” There is no indication the Legislature intended the trustee retain the right to allocate the allowance to income if in fact no depreciation occurred. Therefore, the trial court erred in concluding the allowance should be allocated to income contrary to section 16303, subdivision (b)(ll).
 

 Disposition
 

 The order determining the depreciation reserve to be income is reversed. Robyn and Jolie Stahl are to recover their costs on appeal from the Estate of John M. Stahl.
 

 Armstrong, J., and Godoy Perez, J., concurred.
 

 Repondents’ petition for review by the Supreme Court was denied July 22, 1998. Baxter, J., did not participate therein.
 

 [1]
 

 All future statutory references are to the Probate Code.