# Ehret Estate

Before KLEIN, P. J., BOLGER, LEFEVER, SAYLOR, SHOYER and BURKE, JJ.

*MacCoy, Evans & Lewis*, for exceptant.

*Harry Polish*, guardian and trustee ad litem, contra.

## ADJUDICATION

BOLGER, J., April 27, 1966.—Michael Ehret died February 17, 1913, leaving a will and codicils which were duly probated.

By the seventh paragraph of his will, testator gave two thirds of his residuary personal estate and all of his real estate, subject to a life estate in one third thereof, to his trustees in trust, to hold until the expiration of 21 years after the death of his last surviving child. During the continuation of the trust, he directed his trustees to pay the income, per stirpes, to his descendants living at each quarterly distribution date. At its termination, he directed the payment of principal to his then living descendants, per stirpes. However, by the ninth paragraph of the will, testator gave each of the children a power by will to appoint his share of income and principal among his issue.

Michael Ehret named his sons, Harry S. Ehret and Alvin M. Ehret, and his friend, George W. Elkins, as his executors and trustees. By item eighth of his will, he provided that upon the death or resignation of Elkins, some reliable trust company be appointed in his place. George W. Elkins died on October 23, 1919, and the remaining trustees petitioned this court for the appointment as trustee of Land Title and Trust Company (now Provident National Bank by virtue of various mergers). By decree of this court dated December 12, 1919, accountant's predecessor was appointed substituted trustee. . . .

By decree of this court dated September 14, 1965, Harry Polish, Esq., was appointed guardian ad litem for designated minors and Ellen S. McCall, an incompetent, and trustee ad litem for all unborn and unascertained persons having a possible interest in this trust. His report is annexed. With one exception, he approves the account as stated, and he requests that it be confirmed with one modification. . . .

On page 7 of the account as a disbursement of principal, there appears a credit of $10,000 characterized as "Corporate trustee's compensation". Since this trust is to continue in existence until July 15, 1985, this compensation to the corporate trustee is an interim commission on principal. This is the one exception to the account taken by the guardian and trustee ad litem.

It was stated by counsel for accountant that the claim for $10,000 interim commission is solely on account of, or as part payment for, ordinary services performed by the trustee to date. It does not include any claim for extraordinary services.

In support of its claim for an interim commission on principal, accountant presented the testimony of two of its officers, a trust officer and a vice president in charge of trust administration. They testified as

to the various duties performed by the corporate trustee over the period of its involvement with this trust, such as bookkeeping, possession of the assets of the trust, investment reviews and decisions. Their testimony showed that previous to the payment of the $10,000 in controversy, the corporate trustee had received principal commissions of $2,200.50. This figure is three percent of $73,350 realized on the sale of real estate. This commission was approved at a prior accounting and is not before us. During the continuation of this trust, it has received commissions on income totalling $65,762.75. The account value (as corrected by the testimony of one of the witnesses) of this trust is $746,550.81, and the market value at the accounting date is $1,020,958.16.

It was stated by the guardian ad litem that, if an interim principal commission was properly allowable at this time, the amount of $10,000 was fair and proper under all the circumstances. It is his view of the matter, however, that such a commission is not properly allowable; that it is barred by the rationale of the decisions of the Supreme Court in Williamson Estate, 368 Pa. 343 (1951), and in Scott Estate, 418 Pa. 332 (1965).

Accountant takes the position that the Act of May 1, 1953, P. L. 190, 20 PS §3274 et seq., by its terms operates retroactively to permit an interim principal commission and that there is no bar to its application to a trust created in 1913. In its view, the Act of 1953, permitting interim principal commissions, deals purely with an administrative matter, a matter which can be changed by the legislature at will. It argues that principal commissions will be paid in any event upon the termination of the trust, and it is merely a question when such compensation is to be received.

Prior to the passage of the Act of 1953, it was a long established rule that no commissions on principal

were payable until the termination of the trust: Snyder Estate, 346 Pa. 615 (1943) ; Bosler's Estate, 161 Pa. 457 (1894). This was the state of the law when accountant first became a trustee in 1919, and it is still the law with respect to this trust: Williamson Estate, supra; Scott Estate, supra. Both Williamson and Scott dealt with the question of double commissions, i.e., the payment of a principal commission to a trustee who had received a principal commission as executor. In both cases, the Supreme Court held that the Act of 1953 could not be applied retroactively to pre-1945 trusts in order to permit double commissions. The rationale of both decisions was that when the trustee accepted the trust under the then existing law, an implied contract was created between all of the parties, and such contract could not be abrogated by subsequent legislation. It was part of the contract in this trust that interim commissions on principal were not allowable except in extraordinary circumstances, and this term of the contract is likewise beyond legislative abrogation. The acceptance by accountant of this trust in 1919 fixed the rights, liabilities, and expectations of both income beneficiaries and remaindermen, and the Act of 1953 cannot be applied retroactively to change these rights.

The position of accountant, that the timing of principal commissions is merely an administrative matter which may at any time be altered by the legislature, is explicitly rejected.

In view of the foregoing, the accountants must be surcharged $10,000 for claiming credit for an improper disbursement of principal. . . .

The account shows a balance of principal of $829,350.51, to which add a surcharge of $10,000, making a total of $839,350.51, which, composed as indicated, is awarded to Provident National Bank, surviving trustee, and Richard M. Ehret and Alvin

M. Ehret, Jr., substituted trustees, in trust, for the uses and purposes set forth in the will. . . .

And now, April 27, 1966, the account is confirmed nisi.

OPINION SUR EXCEPTIONS TO ADJUDICATION

SAYLOR, J., December 2, 1966.—This is a "test case" to determine the constitutionality of the Act of May 1, 1953, P. L. 190, 20 PS §3274, as applied to allow reasonable *interim* commissions on principal to the substituted trustee of a pre-existing trust.

A corporate fiduciary and an individual court-appointed trustee of a testamentary trust dating back to 1914 filed their fifth account which contained a credit against principal of $10,000, characterized as "corporate trustee's compensation". The guardian and trustee ad litem objected to this item as it was an interim commission on principal, since by its terms, the trust continues until 1985. The auditing judge disallowed the credit under the authority of Williamson Estate, 368 Pa. 343 (1951) and Scott Estate, 418 Pa. 332 (1965). Exceptions filed by the trustee are before the court en banc.

There was no contention that the credit was in payment for extraordinary services rendered by both trustees or either of them. Officers of the corporate trustee testified as to the various duties performed by the company, as to amounts received by way of commissions on income, and showed the market value of principal at the accounting date as exceeding one million dollars. Neither trustee had served as an executor. Hence, the question of double commission is not raised here.

The question to be answered is simply this: Does the Act of May 1, 1953, P. L. 190, 20 PS §3274, et seq., which permits the payment out of principal of interim commissions to a trustee, apply in a trust estate

created prior to its effective date? We have seen that in Williamson Estate, supra, and Scott Estate, supra, the Supreme Court has ruled that the Act of 1953 is unconstitutional with respect to estates created prior to its enactment, so far at least as it concerned the payment of principal commissions to trustees who had received commissions as executors. Do these decisions affect interim commissions? Are they authority for the refusal of the learned auditing judge to allow the credit? The parties have agreed that $10,000 is an acceptable amount for the interim commission at this time, if any commission is to be allowed. The auditing judge and his colleagues do not disagree. Hence, the single issue is the constitutionality of section 5(1) of the 1953 act, which gives a retroactive right to a trustee of a pre-1953 trust to interim commission if no commission was paid to it on principal as an executor.

Following argument before the court en banc in May, 1966, the court ordered reargument on two specific questions. The first concerned the effect of the spendthrift limitations in the will on the life tenant's consent to the allowance of interim commissions. Only the guardian and trustee ad litem has objected to the credit item. The answer to this question appears to be that beneficiaries' acquiescence in the commission charge should not influence the court one way or the other in deciding the legal question. Only expenses that are legally payable and allowed by the court in accordance with existing law are beyond the reach of a complaining party in interest. Where allowance is based merely on consent by the parties, a decree making such allowance would violate the trust instrument, for it would amount to approval of a release of trust principal and necessarily a diminution of the income payable to the spendthrift beneficiary.

The answer to the second question is the important

one. The question is this: "Whether the ruling in Scott Estate is a binding holding or dictum?"

Both Williamson Estate, supra, and Scott Estate, supra, involved double commissions. In addition, Williamson Estate involved interim commissions. It was a test case to secure for a corporate trustee which had been executor not only increased compensation, but also interim commissions on principal. It was decided after the passage of the Act of April 10, 1945, P. L. 189, but before the adoption of the 1953 act. In affirming the unanimous opinion of this court that it was contrary to long-established law in Pennsylvania, the Supreme Court, through Mr. Justice Stearne, said, at page 350:

"We have repeatedly decided that except in extraordinary or unusual circumstances a trustee is to be compensated *only at the termination of the trust or at the ending of the trustee's connection therewith* [citing cases]. No *interim* commission on principal is originally allowable under the law so declared".

Hence, there was a denial by the court of any double commission to the trustee, whether terminal or interim.

In Scott Estate, supra, interim commissions were not involved. There, a trustee which had served as executor and had been paid a commission on principal sought payment of an additional $20,000 out of principal for its ordinary services. The Supreme Court affirmed the action of this court sitting en banc in denying such additional compensation. In the opinion filed by Mr. Chief Justice Bell, he said, at page 339:

"We hold that Williamson Estate directly controls the instant case and that the 1953 Act stands on the same footing as the 1945 Act".

In Scott Estate, appellant contended that that part of the Supreme Court decision holding the Act of 1945 to be unconstitutional with respect to pre-1945 trusts —that is, it could not apply retroactively—was dictum

and should be repudiated or overruled. The Supreme Court disposed of this contention by stating through the Chief Justice, page 337:

"Irrespective of whether this part of the Williamson Estate Opinion was or was not dictum, we find it persuasive and applicable".

The Act of 1953 was declared to be unconstitutional respecting pre-1953 trusts, just as the Act of 1945 had been so declared respecting pre-1945 trusts.

Consequently, in the matter now before us in the trust, dating back to 1914 for its inception, the allowance of an interim commission payable out of principal would be contrary to the law found by the Supreme Court to have been in effect prior to the enactment of both the 1945 and the 1953 statutes. That is to say, interim commissions, as well as double commissions, are not allowable in any pre-1945 or pre-1953 trust, and the retroactive section of the legislative provision for interim commissions can not constitutionally be applied to the trust before us.

While the result may be that trustees in pre-1945 and pre-1953 trust estates will not be fully or adequately compensated under this dispensation, the fact remains that they continue to be bound by the law in effect at the inception of the trust, and cannot legally receive compensation not contemplated for them when they took up their duties. In 1914, when the trust before us came into being the law of Pennsylvania did not allow interim commissions on principal. Subsequent legislation, not being constitutional as to the retroactive provision, cannot remedy the situation. In Williamson Estate, supra, the Supreme Court said, at page 352:

"Appellant, the corporate fiduciary, accepted this trust in 1930 under the law as it then existed. It was paid in full (except for commission thereafter received by it on income it received and distributed). Such ac-

ceptance fixed the rights, liabilities, exemptions, defenses and expectations of both life tenant and remaindermen".

We all share the opinion that the preferable rule would be to allow payment of the interim commissions claimed by the trustee, and we would adopt this rule if we had authority to do so. However, as a court of first instance, we have no right to ignore a decision of the Supreme Court which apparently disposed of the question in issue. A majority of the court believes that Scott Estate, supra, has decided the point now before us for determination.

The exceptions are dismissed, and the adjudication is confirmed absolutely.

## DISSENTING OPINION

LEFEVER, J., December 2, 1966.—All of the judges of this court agree "that the preferable rule would be to allow payment of the interim commissions claimed by the trustee" on principal in this test case. However, the majority and the minority part company on the effect of Scott Estate, 418 Pa. 332 (1965). The majority holds that Scott Estate squarely decides that allowance of the disputed commission is prohibited.

At first blush, this would seem to be accurate, for Mr. Chief Justice Bell stated at page 339:

"We hold that Williamson Estate directly controls the instant case and that the 1953 Act stands on the same footing as the 1945 Act".

However, the facts and the issue in Scott were very different from those in the instant case.

In Scott Estate, the executors of a testator who died in 1940 were awarded compensation in the adjudication confirming the executors' account. At the termination of the trusts created in the will, the same parties requested additional compensation for their services as trustees. There is language in the majority

opinion, including that above quoted, which implies that the retroactive provisions of both the Act of April 10, 1945, P. L. 189, and the Act of May 1, 1953, P. L. 190, were unconstitutional. However, read in context, it is apparent that the Supreme Court *held* only that the 1945 act and the 1953 act could not constitutionally abrogate the implied contract of the trustees to accept the commission allowed and paid to them as executors, as full payment also for ordinary services rendered as trustees. Thus, allowance of double commissions for ordinary services of the same fiduciary was the sole issue before the court. Scott Estate did *not* pass upon the constitutionality of section 5 of the 1953 act as to allowance of *interim* commissions in a pre-existing trust in that or any other case. That question was not before the court in that case. Moreover, in the instant case, the corporate accountant was *not* the executor, and it has not received any compensation from principal since its appointment as *substituted* trustee, by decree of this court, filed December 12, 1919. It seems patent, therefore, that the instant case is not ruled by Scott Estate.

In approaching the problem in Catherwood Trust, 405 Pa. 61, our Supreme Court set guidelines which precisely define the issue presently before this court. Speaking through Mr. Justice Jones, the court stated, at page 71:

"In determining whether the Principal and Income Act can be applied retroactively to trusts created prior to May 3, 1945, we must consider solely the *legality* from a constitutional viewpoint of so doing: If no constitutional barrier interposes to prevent such retroactive application, we must carry out the legislative mandate which made the provisions of the Act applicable to trusts 'theretofore', i.e., prior to the effective date of the Act, created. The constitutionality of a retroactive operation of the Act will depend on the

existence or nonexistence of any vested property right in the life tenants or remaindermen subject to interference by the legislative enactment. [Italics the court's].

"Certain principles of law are beyond dispute: (1) a gift of an equitable life estate in income or of an estate in remainder does constitute a grant of a vested property right of which the recipients cannot be divested by legislative action; (2) *a vested property right cannot exist in a rule of law*, although a rule of law may establish a vested property right; (3) where an interest is declared vested by this Court, such interest cannot be altered or extinguished by the retroactive effect of any statute". (Italics supplied).

The Supreme Court then turned to Wisconsin for support of the proposition that there is no constitutionally protected property right in a rule of law, stating at page 73:

"In *Will of Allis*, 6 Wis. 2d 1, 94 N.W. 2d 226 (1959), the Supreme Court of Wisconsin expressly rejected the whole rationale of *Crawford Estate*, stating: 'It is fundamental that the life beneficiary possessed no vested property right in the earnings of a corporation, shares of whose stock constituted part of the portfolio of investments of the trust at the time of the enactment of the Wisconsin Uniform Principal and Income Act, prior to a declaration of a dividend by the board of directors payable therefrom. Estate of Gerlach (1922), 177 Wis. 251, 256, 188 N. W. 94. We consider it to be equally clear that she also has no vested property right in the rule with respect to the allocation of corporate stock dividends, which had been established by court decision and was in effect at the time of the death of the testatrix. Therefore, it is our considered judgment that the legislature could change such rule with respect to any stock dividends subsequently declared without violating the due-

process clause of the Fourteenth Amendment.' This reasoning appears eminently sound".

In the Allis case, Tidal Oil Company v. Flanagan, 263 U. S. 444, was cited, with the statement:

"It was therein held that the mere fact, that a state supreme court decides against a party's claim of property or contract right by reversing its earlier decision of the law applicable to such cases, does not deprive him of his property without due process of law nor amount to the passing of a law impairing the obligation of a contract".

Our Supreme Court concluded, at page 77:

". . . the legislature in its wisdom abolished the Rule and substituted a new Rule in its place. Our only task is to determine whether the legislative enactment can constitutionally apply to trusts created prior to its passage. *Crawford* found it could not and *Pew* and *Warden* followed *Crawford*. We have re-examined these decisions and disagree with the results reached. *The legislative enactment did not modify or extinguish any vested property rights. There is no vested property rights in a court-made rule of apportionment*". (Italics supplied).

In Norvell Estate, 415 Pa. 427, the power of the legislature to change rules of apportionment was again challenged, and our Supreme Court again held that the trust beneficiaries had no vested property rights under pre-existing court-made rules of law which were protected from legislative change by the Pennsylvania or the United States Constitutions. The court, speaking through Mr. Justice Roberts, stated at page 433:

"We held in Catherwood that *life tenants have no vested interest in a court-made rule of apportionment.* 405 Pa. at 72-73, 77, 173 A. 2d at 91, 93. Although the life beneficiaries there (as the life tenants here) enjoyed a vested right to the income of the trust, *no vested right exists in the functional, operational or*

*definitional methods of ascertaining from time to time what constitutes such income. Due process does not mandate that prior decisions or rules remain effective and controlling forever.* Thus, it is settled that there is no vested interest in a definition or method of ascertaining income. This conclusion is supported by compelling reasoning and the clear weight of authority". (Italics supplied).

The court cited many tests and cases in support of the above quotation. Among them was Demorest v. City Bank Farmers Trust Company, 321 U. S. 36, 48, in which the United States Supreme Court held constitutional a New York statute which retroactively changed the apportionment between income beneficiaries and remaindermen of the proceeds of sale of foreclosed mortgages, stating through Mr. Justice Jackson:

". . . the state on creation of such a trust does not lose power to devise new and reasonable directions to the trustee to meet new conditions arising during its administration, such as the depression presented to trusts holding mortgages. Cf. Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398. Nothing in the Federal Constitution would warrant us in holding that judicial rules tentatively put forward and leaving much to discretion will deprive the legislature of power to make further reasonable rules which in its opinion will expedite and make more equitable the distribution of millions of dollars of property locked in testamentary trusts, even if they do affect the values of various interests and expectancies under the trust".

Similarly, in Jeffery's Estate, 333 Pa. 15, 20, the court held that the legislature has the power to revise case law rules with respect to the apportionment of Federal estate taxes, stating:

"It is well settled that such interpretation of the statute does not take away vested rights in violation of constitutional limitations; Jewell's Estate, 235 Pa.

119, 83 A. 610; Cahen v. Brewster, 203 U.S. 543; Carpenter v. Penna., 58 U.S. 456. It is not important to consider whether it should be classified as retroactive or prospective; its terms show that it was clearly and manifestly intended to be applied to facts such as appear in the record".

Likewise, in Brereton Estate, 355 Pa. 45, and Van Voorhis Estate, 355 Pa. 82, it was held that the legislature has the constitutional power to abolish a rule giving trustees the power to avoid an agreement of sale by accepting a higher offer. Mr. Justice (later Chief Justice) Stern stated, at page 85 of the latter case:

"It is argued that a vested property right of the trust beneficiaries would be retroactively impaired if the statute were held applicable to this case, because decedent died in 1938 and the act was not passed until May 24, 1945. As far, however, as that question is concerned, it is not the date of decedent's death which is of legal significance but the date when the contract with Hann was entered into, and that was on September 5, 1945, well after the time when the Act became operative. The so-called 'property right' of the beneficiaries consisted in the rule of law which regarded an agreement of sale made by the trustees as a contract enforceable by but not against them; the right, therefore, could come into existence only upon the making of such an agreement by the testamentary trustees".

Professor Lawrence P. King, in a penetrating article, "Uniform Principal and Income Act, §5: Constitutionality of Its Retroactive Application", 1960 Wash. U. L. Q. 339, analyzed retroactive legislation. He observed at pages 346 and 347:

"Turning to various problems that can arise in the administration of a trust, it is apparent that retroactive legislation has not only been attempted, but on the whole, it has been held properly enacted. . . .

"Another example clearly falling within administration is that of the trustee's compensation . . . Where compensation is fixed by statute, the amount thereof *will depend upon the law as it stands at the time compensation is awarded and not at the time of the testator's death*".[1]

It would appear well settled, therefore, that in Pennsylvania a person has *no vested right in a rule of law*. Although the cases indicate that the United States Constitution and the Pennsylvania Constitution give protection to what the law describes as "vested property rights", this doesn't mean that *all advantages which a person enjoys from property ownership must necessarily endure forever*. When a person acquires a property interest, he is entitled to some assurance that it will not be arbitrarily taken away from him without compensation. However, the Federal and State Constitutions do not require that when a continuing relationship is established, all law and administrative practice relating to the relationship will, therefore, be frozen.

Since it appears that there is no constitutional prohibition against the application of retroactive section 5 of the 1953 act under Scott Estate and other Pennsylvania cases, consideration should be given to the wisdom of allowing interim compensation on principal. In our opinion, this should be done for the following reasons:

(1) "The laborer is worthy of his hire". It is fitting and proper that a trustee should receive compensation for faithful and proper administration of a trust estate, both from income and from principal. In the words of Judge Gest, in Middleton's Estate, affirmed per curiam in 66 Pa. Superior Ct. 55, 59:

"Our law proceeds upon the theory that executors,

---

[1] The author then contrasted the Pennsylvania rule under Williamson Estate, supra.

trustees and guardians should be reasonably and fairly compensated for their labor and responsibility, and it is to the interest of the cestui que trust that they should be".

(2) If interim commissions on principal are not allowable, many individual trustees of preexisting trusts will never receive compensation out of principal. The paradox is that such commissions are paid to the trustees' estates *after their death*, but *before the termination of the trust.* This is because, although the average length of a trust in Philadelphia is approximately 25 years, as appears from the evidence adduced in the instant case, many trusts continue far beyond the Biblical three score and 10 years normally allotted to man. Since it is rare to appoint a person as trustee who is less than 30 years of age, it follows inexorably that in many, many cases, the individual trustee just cannot live long enough to survive the termination of the trust. Mr. Justice (now Chief Justice) Bell, in his concurring opinion in Williamson Estate, 368 Pa. 343, 357, cogently recognizes this problem, viz.:

"The trustee likewise desires a modification of our long established rule *which forbids interim compensation* even during a long trust: [citing cases] . . . This rule is so unnecessarily harsh, especially in the case of an individual trustee who, under the present law, (unless he is also an executor) would never (personally) receive any compensation on principal if he dies prior to the termination of the trust, that this Court has itself breached it and in exceptional cases has allowed interim compensation on principal to be paid before the trust terminated or before the particular trustee's relation to it ended: [Citing cases]". (Italics the court's).

(3) Failure to pay interim commissions to corporate fiduciaries requires the corporate entity to finance the cost of operation of the trust throughout the entire

life of the trust out of other income and assets. As a result, payment for the services so rendered is postponed until after the death of the shareholders who own the corporate fiduciary and the employes who work in its trust department during the greater part of the life of the trust.

(4) Many sister states allow interim commissions. They do so on the theory that the trustee is entitled to compensation in the amount earned, based upon the rate authorized *when allowed by the court, and not by the law existing at the inception of the trust*: 3 Scott, Trusts (2d ed.) §242, page 1928 (citing cases from California, Michigan, New Jersey and New York) ; and the further ground that allowance of compensation to a fiduciary is an administrative matter, rather than one involving substantive property rights. In most States, a fiduciary's compensation is set by statute. In oft-cited Johnston Estate, 47 Cal. 2d 265 (1956), the California law as to compensation of fiduciaries is summarized at pages 271 and 272:

" ' "While it is true that the descent is cast and the property of the decedent vested in the devisees and legatees, or in the heirs, at the moment of the death of the deceased, it is also true that they take the property, subject to the payment of the expenses of administration . . ." [Citation]. *On the other hand, the right of the executor to a defined rate or standard of compensation is not vested as of the date of the decedent's death, nor even as of the date when he qualified as executor, but such right first accrues at the time when by appropriate order the amount of compensation payable to him is determined and allowed.*' "

". . .

"It is likewise settled that the fees of administrators, executors, and their attorneys for administering an estate do not arise from contract but are founded upon statutory enactment". (Italics the court's.)

And in New Jersey, interim commissions are allowed on principal: In re Higgins Estate, 61 N. J. Super. 291 (1960). And the statute in effect at the time of the accounting is controlling with respect to the amount of commissions on both principal and income: National State Bank of Newark v. Nadeau, 57 N. J. Super. 53 (1959).

(5) All of the judges of this court and the justices of the Supreme Court who wrote opinions in Williamson Estate, 368 Pa. 343, indicated approval of allowance of interim commissions on principal. However, they were of the opinion that such commissions were prohibited under case law and emphasized that the solution of the problem was corrective legislation.[2] The legislature accepted this invitation by adopting the Act of 1953.

(6) Lower court judges, before the decision in Scott Estate, held that section 5(1) of the Act of 1953 was constitutional. Typical is Colton Estate, 11 D. & C. 2d 538, 539, where President Judge Taxis stated:

"Substantial property rights will not be destroyed by retroactive application of the Act of 1953. The payment of compensation is essentially procedural pertaining to trust administration and can have no adverse effect upon remaindermen. The estate ultimately passing to remaindermen must bear the charge for the trustee's compensation and they have no cause to complain if part of such compensation is prepaid before the trust terminates. The only possible injury is visited upon life tenants who lose the future income which the amount of the interim principal compensation would produce. Does such loss to the life tenant bar a retroactive application of the Act of 1953? I think not. Such

---

[2] See opinions of Mr. Justice Stearne at page 352, Mr. Justice Bell at page 358; Judge Klein's unreported adjudication quoted at 368 Pa. 347; Judge Hunter at 70 D. & C. 233; and Judges Bolger and Ladner at 70 D. & C. 240.

loss is minor and is but incident to a change in a rule of trust administration".

To the same effect are Rea Trust, 28 D. & C. 2d 433, 442 (Taxis, P. J.) ; Stotesbury Estate, 85 D. & C. 551, 553 ( Holland, P. J.) ; Mifflin Trust, 4 Fiduc. Rep. 275, 277 (Bolger, J.) ; and Estate of Charles T. Colladay, no. 455 of January, 1919, unreported adjudication of Saylor, J., dated April 29, 1954.

(7) The issue in the instant case is the *time* when a reasonable and proper commission is to be paid. We are not faced with the serious questions presented in the double commission cases as to whether any commission is payable, and, if so, *how much* is a reasonable commission. The legislature's power to constitutionally regulate the *timing* of a commission, concededly earned and reasonable, is radically different from its power retroactively to authorize a second commission on principal of a trust *after* the first commission has already been paid to the executor, on the implied contract theory that this constituted payment *in full* for all services theretofore provided and thereafter to be rendered.

(8) In ancient England, appointment of an individual as an executor or trustee was considered a great honor and privilege. Hence, compensation was never requested or allowed: Bogert, Trusts and Trustees §975 at 278-80 (2d ed., 1962). However, with the advent of corporate fiduciaries, who operate for profit, compensation was allowed. To be consistent, individual fiduciaries were also awarded compensation. The rule then developed that only one commission would be paid out of principal; that this would be allowed at the conclusion of the executorship and would cover *services previously rendered as executor and anticipated services to be provided as trustee:* Middleton's Estate, 66 Pa. Superior Ct. 55, 57, which affirmed Judge Gest and this court en banc, where he stated:

"This trust may continue for many years. It is impossible to say how long. But under the Act of March 17, 1864, P. L. 53, Stew. Purd. 1127, the executor and trustee must at this time receive a single commission, *which shall be deemed full compensation* for its services in the double capacity of executor and trustee". (Italics supplied).

Accord: Milliken's Estate, 36 Pa. C. C. 187; and Moore's Estate, 13 Dist. R. 137.

While these rules against allowance of double commissions and interim commissions out of principal were developing, a number of exceptions to the prohibition against interim commissions became firmly established. Illustrations follow:

(1) A trustee is entitled to be paid interim compensation out of principal for extraordinary services: Williamson Estate, 368 Pa. 343; Thouron's Estate, 182 Pa. 126; see Penn-Gaskell's Estate (No. 1), 208 Pa. 342.

(2) Commissions out of principal are payable upon the death or resignation of a trustee.

(3) Interim commissions are allowed where all beneficiaries of the trust, both income and remaindermen, are sui juris and agree to the allowance of the commissions.

(4) Where a trust terminated in part, commissions on principal of the outgoing share were awarded to the trustee: Willis Estate, 11 D. & C. 2d 166, 178. So also both the estate of the deceased individual trustee and the corporate trustee were awarded commissions on distributions of principal made during the administration of the trust, although the trust had not terminated in whole: Kennedy Trust, 364 Pa. 310.

(5) Sections 1 and 5(2) of the Act of May 1, 1953, at issue in the instant case, specifically authorize allowance of interim commissions in all trusts which come into being *after* the effective date of the act—no constitutional issue is involved in such cases.

It follows from the above illustrations that allowance of interim commissions on principal to trustees is presently more nearly the rule than the exception. Only in trusts which came into being prior to May 1, 1953 will the old rule proscribing interim commissions on principal be operative, if retroactive section 5(1) of the Act of 1953 be held unconstitutional.

Mr. Chief Justice Bell, in his concurring opinion in Williamson Estate, supra, aptly stated at pages 353 et seq.:

"There has been a very great change in conditions in recent years, and it is trite but true to say that changing times and conditions sometimes require changes in our law. The adage of Sir Edward Coke is particularly appropriate: 'Reason is the life of the law.' I believe that if the reason for a rule or principle of law no longer exists and changed conditions have made it unwise or unjust, to continue it unchanged only brings the law into public disrepute. If the law is judicially made, it can, and if no property or contract rights are involved, it should be judicially changed if justice requires.

"Because the questions presented in this case are of such great importance to the community, this Court should, in my judgment, avail itself of this opportunity to (a) change or modify several rules or principles which are now, because of changed conditions, producing inequity or injustice; and (b) erect certain new modern standards for the guidance of all parties who are or may be concerned".

Conforming to these views of the chief justice, there has been a tendency recently for our Supreme Court to place Pennsylvania law in accord with that of sister States. The present case is one of first instance since the adoption of the Act of 1953. Logic dictates that Pennsylvania should fall in line with sister States in: (1) allowing interim commissions out of principal to

trustees in all trusts, both pre-existing[3] and future, and (2) applying the statutory law as to such commissions as of the date of the award thereof, rather than as of the date of testator's death.

A majority of our colleagues is of the opinion that the implied contract theory, which established the vested rights in Williamson Estate and Scott Estate that precluded payment of double commissions, is here a stumbling block to applying the 1953 Act retroactively. Mr. Justice Stearne did not so state, however. His opinion for the court, page 352, carefully limits that injunctive reasoning to a construction of the Act of 1945. Mr. Chief Justice Bell, writing the opinion for the court in Scott, confirms this, page 337, by noting that it was only as to point (2), the holding "that

---

[3] In an excellent note, entitled "The Constitutionality of Retroactive Trustee Compensation Statutes in Pennsylvania," 114 U. Pa. L. Rev. 530, the writer pertinently reasons at page 537 et seq.:

"The argument for upholding a retroactive application of the interim principal commission statute is significantly stronger than is the case for allowing a second principal commission where the executor-trustee has collected a full commission under the repealed statute. The purpose of awarding an interim principal commission is to compensate the trustee for his services more promptly than was the practice under the terminal principal commission rule. This change is especially advantageous to the individual trustee, who will certainly be more willing to assume his duties knowing that he, rather than his estate, will reap the fruits of his labor. In the case of the retroactive interim principal commission statute, the remainderman has no standing to complain. The trustee is entitled to a principal commission and the fact that it is paid in more than one installment would not seem to affect the total amount of the award. Nor should the slight reduction of income resulting from the early award of a principal commission defeat any reasonable expectations of the income beneficiary, since the amount of income commissions in Pennsylvania has always been at the discretion of the court and subject to variation. . . Balancing the purpose served by the retroactive interim principal commission statute against the slight reduction of income from the trust, it seems that the law is clearly reasonable".

the Act of 1945 could not be applied *retroactively*", which established the existence of vested rights by implied contract.

I would allow the requested interim commission on principal to the substituted trustee. Accordingly, I dissent. Judge Shoyer joins in this dissenting opinion.